**PEPI, INC., Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 357, Docket 34678.**

United States Court of Appeals, Second Circuit.

Argued Jan. 7, 1971.

Decided Sept. 7, 1971.

Ben Herzberg, New York City (Botein, Hays, Sklar & Herzberg, Sydney C. Winton, Robert J. Wolpert and Sherwin Kamin, New York City (of Kramer, Lowenstein, Nessen & Kamin), New York City, on the brief), for appellant.

John S. Brown, Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and Elmer J. Kelsey, Washington, D. C., on the brief), for appellee.

Before LUMBARD, MOORE and SMITH, Circuit Judges.

LUMBARD, Circuit Judge:

PEPI, Inc. appeals from a decision of the Tax Court, 52 T.C. 854 (1969) (Mulroney, J.), which held that the petitioner's predecessor corporation, Philips Electronics, Inc. (Electronics) was not entitled to certain tax deductions in its 1958 and 1959 returns. Electronics had taken the deductions based on a $2,133,-250.03 loss carryover that it had acquired as a result of a merger between its predecessor corporations, Philip Electronics, Inc. (Old Philips) and A. Hollander & Son, Inc. The Tax Court held that since the merger had been undertaken for the principal purpose of securing the carryover loss of A. Hollander & Son, Inc. for Electronics, the loss carryover deduction taken should be disallowed under section 269 of the Internal Revenue Code. PEPI, Inc. also appeals from the Tax Court's denial of its motion for a further hearing. We agree with the Tax Court's disposition and accordingly affirm.

In its finding of fact, the Tax Court determined that PEPI, Inc. was a member of the American Philips group of companies. The American Philips group was created prior to World War II when the Dutch Company on N. V. Philips (Dutch Philips) placed its American assets in trust with the Hartford National Bank and Trust Company. This trust owned all the stock of a holding company named Philips Industries, Inc (Industries) and Industries in turn owned all the stock of Philips Electronics, Inc. (Old Philips). The American Philips

group was interested in expansion and, to this end, had formed an Industrial Expansion Committee which concerned itself with acquisitions of other corporations by mergers. Paul Utermohlen was a member of this committee at the time of the events in question.

A. Hollander & Sons, Inc. (Hollander) was a Delaware corporation listed on the New York Stock Exchange. Hollander had suffered heavy losses for the years 1953, 1954, 1955 and the first half of 1956 in its operation of a fur processing business. Sometime in the first half of 1956 Utermohlen recommended to Hollander that it engage the services of Wallace A. Collins, a New York attorney. Collins had been counsel for the Philips group in an earlier merger acquisition.[1] Also during the first half of 1956, Hollander had dismissed its old firm of accountants and had hired the firm which was also the auditor for all of the American Philips group. After his engagement, Collins spun off Hollander's unprofitable fur business leaving Hollander without any operating assets. Hollander had remaining real estate and other assets worth about a million and a half dollars.

In August 1956 while Collins was working for Hollander, he heard of a business corporation named Brook Chemical Co. (Brook). Brook was available for acquisition, but only on a cash basis. When the spin-off of the fur business was complete, Hollander entered into negotiations with Brook and reached a purchase agreement for $2,800,000 cash. Hollander did not have this amount and, lacking any operating assets, was unable to borrow it through normal banking channels. However, Collins was able through the aid of Paul Utermohlen to obtain the loan for Hollander. Utermohlen, in addition to his position on the acquisition committee of American Philips, was closely associated with a Delaware corporation known as the Schuyler Corporation (Schuyler).[2] All the stock of Schuyler was owned by a foundation that had been established as a welfare fund for employees of Dutch Philips. Schuyler's business was to make investments in the United States for the benefit of the welfare fund. Utermohlen had Schuyler lend a debenture it owned to Hollander. Using this debenture as collateral, Hollander was able to borrow $2,500,000 from two investment companies, that in conjunction with $300,000 cash it had available financed the purchase of Brook.

In return for its loan of the debenture to Hollander, Schuyler received as consideration $32,000 and an agreement with respect to a future merger. This agreement provided that Schuyler could require Hollander, subject to stockholder approval, to acquire the corporate assets of, or merge with, a business enterprise offered or specified by Schuyler on or before September 1, 1957 and meeting certain specified requirements. The requirements were a net worth between $5,000,000 and $6,000,000 and earnings in the last three years of $600,000 per year. The agreement further provided that if the stockholders approved, Hollander would exchange one share of its stock for each $10 of net worth of the business acquired. Finally, it provided

---

1. In 1954 Collins was counsel for American Philips when it secured 49% of the stock of Reynolds Spring Company, a publicly held company whose stock was traded on the New York Stock Exchange. The acquisition was accomplished by American Philips selling to Reynolds Spring a subsidiary corporation of American Philips for 279,000 shares of Reynolds stock. Before the acquisition, Reynolds had sold its operating assets, an automotive cushion spring business that had been losing money for some years. At the time of the acquisition, Reynolds had a carryover loss of $750,000. In the proxy statement prior to the acquisition, it was denied that any consideration was given to the utilization of the carryover loss for the successor corporation. Subsequently, a deduction was taken by the merged corporation based on the carryover loss. The deduction was partially disallowed under Int.Rev.Code of 1954, § 382.

2. The Tax Court found that Utermohlen was "essentially the business manager" of Schuyler. 52 T.C. at 857.

that if Hollander did not effect an acquisition by September 1, 1957, Schuyler had the right to require Hollander to purchase the collateral which it had furnished for $1,600,000 payable in cash or stock of Hollander.

In March of 1957 the Industrial Expansion Committee of the Philips group recommended the merging of Old Philips which met the detailed specifications of the Hollander-Schuyler agreement, into Hollander. In April 1957, Schuyler assigned its contract with Hollander to Industries. A merger agreement was executed between Industries and Hollander. After receiving stockholder approval on both sides, the merger became complete July 31, 1957. American Philips, through Industries retained a sixty-four per cent interest in the surviving corporation, while the remaining stock was publicly held. Subsequently the surviving corporation, Hollander, changed its name to Philips Electronics, Inc. Since Hollander had suffered such heavy losses during the 1953–56 period, its successor Philips Electronics, Inc. attempted to take advantage of them in reporting its taxable income for the years 1958 and 1959. The Commissioner disallowed these deductions under section 269 and determined deficiencies of $665,195.57 and $420,440.40 for 1958 and 1959 respectively. The Tax Court, finding that the merger between Old Philips and Hollander had been undertaken primarily for the purpose of securing the tax deduction, sustained the Commissioner's determination. We agree.

■ Section 269 as applicable to the years in question provided that "if any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation * * and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. * * * "
As chronicled in the legislative history,

the purpose of the statute is to "put an end promptly to any market for, or dealings in, interests in corporations or property which have as their objective the reduction through artifice of the income or excess profits tax liability." H.Rep. No.871, 78th Cong., 1st Sess., at 49 (1944 Cum.Bull. 901, 938). But as business and lawyers have become increasingly sophisticated in regard to tax matters, it has not been uncommon to find that a particular transaction or series of transactions has served both legitimate business and tax avoidance purposes. In such situations, "it is immaterial by what method or conjunction of events the benefit was sought," I.R.C. Reg. § 1.269–3, "if the evasion or avoidance purpose outranks or excels in importance any other one purpose," S.Rep. No.627, 78th Cong., 1st Sess., at 59 (1944 Cum.Bull. 973, 1017), the transaction falls under the proscription of section 269.

■ In determining whether the principal purpose of an acquisition was the avoidance of tax liability, the fact-finder must scrutinize all the circumstances surrounding the transaction. I.R.C. Reg. § 1.269–3. Once the Commissioner had made the determination that the principal purpose of a transaction was tax avoidance, the taxpayer bears the burden of showing by a preponderance of the evidence that the Commissioner's determination was erroneous. J. T. Slocomb Co. v. Commissioner of Internal Revenue, 334 F.2d 269, 273–274 (2d Cir. 1964).

The Tax Court here found that a plan to merge Hollander and Old Philips existed as early as the first half of 1956. It supported this finding by relying on Utermohlen's suggestion that Collins be hired by Hollander, on Collins' earlier contact with Philips as counsel in a similar merger acquisition, on Hollander's hiring of Philips' accountants in place of its own and, particularly on Utermohlen's arranging, through Schuyler, Hollander's acquisition of Brook. The inference to be drawn from the first three factors standing alone might be doubt-

ful, although they do indicate some substantial contact between American Philips and Hollander, but the Schuyler-Hollander agreement fairly supports an inference of agreement to merge between Hollander and the American ·Philips group. There seems to be little reason for Schuyler to have lent a $1,600,000 debenture to Hollander solely in return for a $32,000 consideration. Thus the second half of the consideration—the agreement to let Schuyler designate an appropriate company to merge with Hollander—takes on more importance. Appellant contends that this aspect of the loan contract was entered into for the purpose of making Hollander a stronger company, thus adding to the security of Schuyler's loan. It would seem, however, that the best security for Schuyler would have been to forego the loan entirely unless it was desirous of the merger for other purposes. It is also noteworthy that the requirements were fairly specific, yet Old Philips met them all. Taken together, the unusual loan agreement and Philips' other contacts with Hollander through Utermohlen and Collins constitute substantial evidence to support a finding that Old Philips and Hollander had an intent to merge at least by the time of the Schuyler-Hollander agreement.

The Tax Court determined that since an intent to merge existed between Old Philips and Hollander prior to Hollander's acquisition of Brook, Brook itself could not have been the consideration that prompted the merger. We agree. Appellant argues that even if there were an intent to merge prior to Hollander's acquisition of Brook, American Philips was desirous of obtaining Brook and since Brook was a property of Hollander, this was a substantial inducement to the merger. The Tax Court found, however, that American Philips could have purchased Brook directly and need not have aided Hollander to do so, so that Hollander's acquisition of Brook was not an inducement to the merger. The availability of Brook was first discovered by Collins when he was working for Hol-

lander; consequently its acquisition was a corporate opportunity for Hollander to develop. But, as the trial court found, Hollander lacked the resources to acquire Brook and had to turn to Utermohlen. Utermohlen was under no duty to aid Hollander in obtaining financing for he had no connection with Hollander (other than his interest in merging it with Old Philips). Utermohlen could have, if he desired, simply turned down Collins' request and purchased Brook directly for the American Philips group. Since Brook was available to American Philips independent of American Philips' acquisition of Hollander, we agree with the Tax Court that the desirability of Brook was not a factor in the Old Philips-Hollander merger.

In fact, it would seem that the primary purpose of Hollander's acquisition of Brook through the Schuyler-Hollander agreement was to obscure the fact that Hollander's carryover losses were not available to the merged Old Philips-Hollander corporation. The acquisition of a corporation which has as its principal asset a carryover loss usually will be undertaken for the primary purpose of securing a tax benefit. Any deduction, attempted after the acquisition, that is based on the carryover loss normally will fall within the proscription of section 269 unless the taxpayer can show that the impetus to the acquisition was a nontax objective. J. T. Slocomb Co. v. Commissioner of Internal Revenue, 334 F.2d 269 (2d Cir. 1964); F. C. Publication Liquidating Corp. v. Commissioner of Internal Revenue, 304 F.2d 779 (2d Cir. 1962).

■ Appellant contends, however, that Hollander's listing on the New York Stock Exchange was far more important than any possible tax benefit as an inducement to the merger. We agree with the Tax Court's conclusion that American Philips' desire to obtain a New York Stock Exchange listed company was not the primary purpose for the merger, but we base our conclusion on a different ground than the lower court. It appears from the record that the American Phil-

ips group did not know until after the merger that the merged company could not continue to be listed on the New York Stock Exchange. Although the company subsequently was listed on the American Stock Exchange, if the principal purpose of the merger was the acquisition of a company listed on the New York Stock Exchange, the failure of American Philips to investigate and verify the availability of a stock exchange listing prior to the merger is incredible. This deficiency alone supports the Tax Court's conclusion that the principal purpose of the Old Philips-Hollander merger was not the acquisition of a New York Stock Exchange listing.

Appellant makes an argument that since the consideration given up by Industries—36% of Old Philips worth between $2,700,000 and $4,000,000 [3]—was worth more than the possible tax benefits, $815,000,[4] the primary purpose of the merger must have been to receive other more valuable considerations. However, part of the consideration American Philips paid for its 64% share of the merged company was for its share in Brook, which, at the time of the merger, was worth approximately $2,800,000 based on Hollander's arm's length purchase price. Since, as developed above, Hollander's purchase of Brook evidently was for the sole purpose of confusing the tax picture, the desirability of Brook is not properly seen as an inducement to the merger. Additionally, part of the consideration paid was for Hollander's non-operating assets valued at approximately $1,500,000. Appellant makes no claim that these assets were an inducement to the merger, yet they certainly had to be paid for. Simple calculation shows that 64% of these assets equals $2,652,000. Thus even without reference to the tax benefit, the value received by Industries is approximately equal to one of its esti-

mates of the value of the consideration that it gave up on the merger. Since Industries received value that on the proof presented may well have been equal to the value that it gave up even without considering the tax benefit, the chance to gain an $815,000 tax benefit might well have loomed large in the taxpayer's thinking. At least this was the Commissioner's determination sustained by the Tax Court. Since petitioner has failed to convince us that either the acquisition of Brook or the receipt of a listing on the New York Stock Exchange, or both combined, were the primary purpose behind the merger, we conclude that there was substantial evidence to support the Tax Court's finding.

Appellant makes several further arguments which we treat briefly. First, it is argued that the state of the law as to the availability of the tax benefit was so uncertain at the time of the merger that the principal purpose of the acquisition could not have been the avoidance of tax liability. Appellant's argument is based on a Supreme Court decision, Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924, decided May 27, 1957, which admittedly did make the availability of the tax benefit somewhat less certain. But, as the Tax Court found, the decision to enter into the merger had been made by September 1956, eight months before Libson Shops had been handed down. Thus Libson Shops could have had no effect on the decision to initiate the acquisition. When Libson Shops was decided, Hollander had already acquired Brook. If Old Philips had not entered into the merger at this point, it would have lost the opportunity to acquire Brook, an opportunity that the American Philips group had deliberately foregone some months earlier. For its part, Hollander was not likely to forego the merger. If it did, it

---

3. Appellant was unable to make a more exact valuation of the value of 36% of Old Philips assets. The Tax Court accepted without comment that the valuation was "somewhere between $2,700,000 and $4,000,000." 52 T.C. at 859.

4. The Commissioner conceded that $815,000 was the maximum possible tax benefit. The figure was arrived at by determining 64% of the loss carryover and multiplying that by the tax rate, approximately 50%, that would be paid by the merged company.

was liable to American Philips for $1,-600,000 payable in Hollander stock, which would have given American Philips approximately 40% of the Hollander stock, enough probably to direct a later merger. Alternatively it could have given American Philips a $1,600,000 note at 4½% payable September 1, 1960. The projected earnings of Hollander through its operation of Brook were estimated to be $600,000 a year. Since the $2,500,000 loan for the acquisition of Brook had to be paid during this same period, Hollander would not have had sufficient funds to cover its indebtedness if it had not merged with Old Philips. Moreover, in addition to the economic impetus for the merger, Hollander and American Philips had been working together for some time. Hollander never would have acquired Brook, but for the intervention of American Philips. Even if there had been no legal obligation on its part to go forward with the merger, as the Tax Court found, "Hollander's top management had long been in basic agreement on the advisability of the merger." 52 T.C. at 865.

■■ Appellant makes another argument that receipt of the tax benefit was not the principal purpose of the merger as the proxy statement recites that no such consideration was given to the operating loss carryover. The Tax Court simply disbelieved the statement finding it overly self-serving. The issue of credibility is normally with the fact-finder and the Tax Court is not required to accept the testimony of interested witnesses as to their purpose and intent. Helvering v. National Grocery Co., 304 U.S. 282, 295, 58 S.Ct. 932, 82 L.Ed. 1346 (1938). The Tax Court properly noted that in a prior merger involving a company from the American Philips group a similar disclaimer was placed in the proxy statement.[5] Subsequently the merged company made a claim for the carryover loss and was partially successful. In evaluating the credibility of the statement in the instant case, the Tax Court was well within its province in taking into account the prior proxy statement and the subsequently garnered tax benefit.

■ Appellant makes the final argument that the successful operation of the merged Old Philips-Hollander company indicates that the primary purpose of the acquisition could not have been tax avoidance. But this is nothing more than a *non sequitur*. Old Philips was a successful electronics company before the merger and continued to be so. Brook was a successful chemical company prior to the merger and also continued its course. There were later acquisitions that added to the company's success. Though these acquisitions may have been facilitated by Philips Electronics Inc.'s American Stock Exchange listing, on the facts of this case the receipt of that listing cannot be held to have been the primary purpose of the merger. In short, the fact of appellant's economic success does not conflict with the Tax Court's finding that the primary purpose of the merger was tax avoidance.

■ Appellant argues that even if it was not entitled to a decision on the merits in the Tax Court, that court erred in failing to allow appellant a further hearing at which it could present as witnesses Utermohlen and Pieter van den Berg, who was the senior officer of the American Philips group. Appellant has given no good reason for its failure to call Utermohlen and van den Berg at trial and we see no reason to reverse the Tax Court's discretionary denial of a further hearing. See Henry Van Hummell, Inc. v. Commissioner of Internal Revenue, 364 F.2d 746, 751 (10th Cir. 1966), cert. denied 386 U.S. 956, 87 S.Ct. 1019, 18 L.Ed.2d 102 (1967); Mensik v. Commissioner of Internal Revenue, 328 F.2d 147, 151 (7th Cir.), cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964). However, appellant argues that the Tax Court drew unjustifiable inferences against it from its failure to present Utermohlen and van den Berg. Appel-

5. See note 1 *supra.*

lant misconstrues the Tax Court's opinion. After detailing at some length the inferences which it drew from uncontradicted facts, the Tax Court suggested that the only way these inferences could have been contradicted would have been through the testimony of the two unoffered witnesses. The court's comment that appellant's case might have been stronger if the unoffered witnesses had testified was entirely justified. The Tax Court's discretionary denial of a post-opinion motion for a further hearing will normally not be reversed unless there is a showing of extraordinary circumstances. Henry Van Hummell, Inc. v. Commissioner of Internal Revenue, 364 F.2d 746, 751 (10th Cir. 1966), cert. denied 386 U.S. 956, 87 S.Ct. 1019, 18 L.Ed.2d 102 (1967); Mensik v. Commissioner of Internal Revenue, 328 F.2d 147, 151 (7th Cir.) cert. denied 379 U.S. 827, 85 S.Ct. 55, 13 L.Ed.2d 37 (1964). Since the statements in the opinion not only do not amount to "extraordinary circumstances," but were quite appropriate in their context, the denial of the motion was not an abuse of discretion. Mayer v. Higgins, 208 F.2d 781, 782–783 (2d Cir. 1953).

Judgment affirmed.