# BAY SOUND TRANSPORTATION CO.

v.

## UNITED STATES of America.*

### No. 63–H–73.

United States District Court,
S. D. Texas,
Houston Division.

May 26, 1972.

---

* Consolidated with No. CA. 63–H–75, Coastal Transportation Co. v. United States of America; No. CA. 63–H–76, The Christine Towing Co. v. United States of America; No. CA. 63–H–77, Riverside Transportation Co. v. United States of America; No. CA. 63–H–78, Murray Bay Transportation Co. v. United States of America; No. CA. 63–H–79, Dixon Bay Transportation Co. v. United States of America; No. CA. 63–H–80, Green Bay Transportation Co. v. United States of America; No. CA. 63–H–81, Erie Barge Co. v. United States of America; No. CA. 63–H–82, Ev Barge Co. v. United States of America; No. CA. 63–H–83, Gulf Storage Company, Inc. v. United States of America; No. CA. 63–H–84, Lavaca Barge Co. v. United States of America; No. CA. 63–H–85, Naptha Barge Co. v. United States of America; No. CA. 63–H–86, Navidad Barge Co. v. United States of America; No. CA. 63–H–87, Wolverine Barge Co. v. United States of America; No. CA. 63–II–88, Huron Barge Co. v. United States of America; No. CA. 63–H–89, Michigan Barge Co. v. United States of America; No. CA. 63–H–90, Superior Barge Co. v. United States of America; No. CA. 63–H–91, Ontario Barge Co. v. United States of America; No. CA. 63–H–92, St. Clair Barge Co. v. United States of America; No. CA. 63–H–93, Jack Barge Co. v. United States of America.

Masquelette, Bailey, Donisi & Haynes, John A. Bailey, Houston, Tex., for plaintiffs.

Charles G. Barnett, Atty., Tax Div., Dept. of Justice, Dallas, Tex., for Government.

### MEMORANDUM OPINION AND SUPPLEMENTAL FINDINGS OF FACT

HANNAY, District Judge.

These cases were tried to the Court without a jury. The Plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit and that Court affirmed in part and remanded in part these cases for further proceedings not inconsistent with the determination of the appellate court. Plaintiffs thereafter filed a petition for a writ of certiorari with the United States Supreme Court and that petition was denied.

The only question now presented for determination by this Court is whether the principal purpose motivating the separate incorporation of the various barges and vessels acquired by the Edwards fleet[1] in 1955 and subsequent years was the evasion or avoidance of federal income taxes by securing the benefit of multiple surtax exemptions.

### STATUTES INVOLVED

The statute pertinent to the unresolved issue in this case is set forth in the Appendix, *infra*.

See Bay Sound Transportation Company v. United States, (5 Cir.) 410 F.2d 505 at page 512:

"Section 269 provides that if any person acquires control of a corporation and the principal purpose of this acquisition is evasion of income taxes by securing the benefit of a deduction, credit, or other allowance, which he would not otherwise enjoy, then the deduction credit or allowance may be disallowed. The determination of the taxpayer's principal purpose in incorporation is a question of fact that depends upon the intent of the taxpayer at the time he acquires control of the corporation. See Airport Grove Corp. of Polk County, et al. v. United States of America, 5 Cir., 1969, 408 F.2d 870. The taxpayer has the burden of proving that control was not acquired for the unlawful purpose. American Pipe & Steel Corp. v. Commissioner, 243 F.2d 125 (9 Cir., 1957)."

In Bobsee Corporation v. United States, 411 F.2d 231 at 238, the Fifth Circuit held:

"The proscription of section 269 obtains where the *principal purpose* for the acquisition of a corporation is tax

1. The corporations involved in this issue are:

| Name of Plaintiff | Civil Action No. |
|---|---|
| Bay Sound Transportation Co. | 63–H–73 |
| Coastal Transportation Co. | 63–H–75 |
| Christine Towing Co. | 63–H–76 |
| Riverside Transportation Co. | 63–H–77 |
| Murray Bay Transportation Co. | 63–H–78 |
| Dixon Bay Transportation Co. | 63–H–79 |
| Green Bay Transportation Co. | 63–H–80 |
| Erie Barge Co. | 63–H–81 |
| Ev Barge Co. | 63–H–82 |
| Gulf Storage Co., Inc. | 63–H–83 |
| Lavaca Barge Co. | 63–H–84 |
| Naptha Barge Co. | 63–H–85 |
| Navidad Barge Co. | 63–H–86 |
| Wolverine Barge Co. | 63–H–87 |
| Huron Barge Co. | 63–H–88 |
| Michigan Barge Co. | 63–H–89 |
| Superior Barge Co. | 63–H–90 |
| Ontario Barge Co. | 63–H–91 |
| St. Clair Barge Co. | 63–H–92 |
| Jack Barge Co. | 63–H–93 |

avoidance. The IRS has determined that each of the appellant corporations was organized for the principal purpose of obtaining the surtax exemption and this determination is presumptively correct.[2] The burden

2. Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

of proving that tax avoidance was not the principal purpose is on the taxpayer.[3] Theoretically the question of

3. Green Light Co. v. United States, 405 F.2d 1068, 1070 (5th Cir. 1968); Dorba Homes, Inc. v. Commissioner of Internal Revenue, 403 F.2d 502, 505 (2d Cir. 1968).

purpose is purely subjective; pragmatically, however, the trier of fact can only determine purpose from objective facts. Thus, unless the taxpayer can muster facts sufficiently plausible to convince the trier of the purity of his motives, the IRS will prevail.

"Under the definition of 'control' in subsection 269(a), the presence of a principal tax-avoidance purpose on behalf of any fifty-percent interest in an acquired corporation renders the corporation subject to disallowance of the surtax exemption. Of course, the purpose of the actual fifty-percent shareholder may in certain circumstances be completely irrelevant. For example, if a business manager attends to all the details of a business— including the organization of corporate forms—the owner's mind might be a perfect tabula rasa. The relevant 'mind' is the person who actually has a purpose, that is, other than the general purpose of making money.[4]

4. Classical analysis would probably deem the general desire to make money a *motive* rather than a purpose. See Blum, Motive, Intent, and Purpose in Federal Income Taxation, 34 U.Chi.L. Rev. 485, 486–87 (1967). However, since triers of fact are not likely to observe such refinements, the terms are treated as synonymous in this largely pragmatic analysis.

Thus the statute cannot be sidestepped by merely divorcing purpose from ownership.[5]

5. In Dorba Homes, Inc. v. Commissioner of Internal Revenue, 403 F.2d 502 (2d Cir. 1968), the controlling owners of two corporations—Lumar Homes, Inc. and Dewmar Construction Co., Inc.—were the wives of the actual promoters. The Second Circuit held that, since the wives did not appear and testify on behalf of the taxpayer-corporations, the IRS could not prevail because the ownership of the controlling shares could not be attributed to the husbands. Id. 506–507. We cannot accept this analysis for two reasons. First, the burden of proof is on the corporations to prove that tax avoidance was not the principal purpose of their formation; if the purpose of the controlling owners is relevant and they do not come forward on behalf of the corporations, then the IRS must prevail. And second, the facts surrounding the formation of both wives' corporations indicate that the wives' purpose, if any was irrelevant.

"This court has held that the *principal purpose* is the purpose which exceeds all other purposes in importance.[6] Citing Treas.Reg. § 1.269–3

6. Green Light Co. v. United States, 405 F.2d 1068, 1070 (5th Cir. 1968).

(1962), both parties state a standard different from the one adopted by the court, *viz.*, that a purpose is the principal purpose if it exceeds in importance *any other one purpose.*"

See Shaw Construction Co. v. C. I. R., 323 F.2d 316 and cases which are therein cited. U. S. Court of Appeals, Ninth Circuit, 1963.

In the Atlas Storage Company v. United States, (D.C.W.Va.) 306 F.Supp. 570 at 581, the Court stated:

"In any event, however, even if it be conceded that the advantages itemized by Maier were legitimate business purposes for this corporate arrangement, they are not sufficient to carry the day for the taxpayers in this litigation in the light of the overwhelming evidence of the tax advantages obtained thereby. It is not nec-

essary under the statute that tax avoidance be the sole purpose of the arrangement, but only that it be the 'principal purpose.' See J. T. Slocomb Co. v. C. I. R. [(2 Cir. 1964) 334 F.2d 269] *supra*. As heretofore pointed out, the burden rests upon the taxpayer to show that such avoidance was not the principal purpose of the acquisition, and under the evidence in this case, it is my conclusion that the taxpayers have failed to carry that burden. Accordingly, it is my further conclusion that the taxpayer corporations were acquired for the principal purpose of evading or avoiding federal income taxes within the meaning of Section 269 of the Internal Revenue Code of 1954 and that the Commissioner of Internal Revenue properly disallowed the surtax exemption for the several taxpayer corporations except for one corporation in each of the three geographical areas."

The Atlas case was affirmed by the Fourth Circuit in 1971. See 437 F.2d 1319. This opinion which involved some eighteen warehouse corporations controlled by one person was affirmed as to fifteen of the eighteen warehouse corporations.

In Airport Grove Corp. of Polk County v. United States, 408 F.2d 870 (1969), decided by the Fifth Circuit in 1969, the Court wrote regarding some fifteen citrus groves separately incorporated that:

"Section 269 provides that if any person acquires control of a corporation and the principal purpose of this acquisition is evasion of income taxes by securing the benefit of a deduction, credit, or other allowance which he would not otherwise enjoy, then the deduction, credit, or allowance may be disallowed. The determination of the taxpayer's principal purpose in incorporation is a question of fact that depends upon the intent of the taxpayer at the time he acquires control of the corporation. See Southland

Corp. v. Campbell, 5 Cir. 1966, 358 F.2d 333, 337; Green Light Co. v. United States, 5 Cir. 1968, 405 F.2d 1068. 7 Mertens, Law of Federal Income Taxation § 38.69 (1967). The Taxpayer has the burden of proving that control was *not* acquired for the unlawful purpose. American Pipe & Steel Corp. v. Commissioner of Internal Revenue, 9 Cir. 1957, 243 F.2d 125."

In Bobsee Corporation v. United States, (5th Cir., 1969) 411 F.2d 231, at page 238, "control" is defined as follows:

"Under the definition of "control" in subsection 269(a), the presence of a principal tax-avoidance purpose on behalf of any fifty-percent interest in an acquired corporation renders the corporation subject to disallowance of the surtax exemption."

Coming now to the questions of fact. While this Court has carefully examined, reviewed and studied the statement of facts in this case consisting of more than 1,827 pages of testimony and in addition thereto the pleadings and the exhibits, it is thought best to restate some of the testimony with reference to the question of multiple corporation issue: C. W. Edwards was the master mind and the ultimate decision maker in the organization of the eighteen new vessels incorporated. He alone let the contracts for the construction of the vessels and as they were completed and delivered, the corporations took title. The vessels were then placed in service with the Edwards fleet. Of the 20 corporations organized between 1955 and 1960, 14 each owned one barge, and 6 each owned one boat. (G. Exs. 7 & 8, pars. 37, 38, 44, 46, 48, 49, 50, 52, 54, 56, 58, 60, 62, 63, 65, 67, 69, 71, 73, 75, 76 and 77). Mr. Edwards was the major stockholder and chief executive officer of all the said corporations except the two in which his son was major stockholder and chief executive officer. None of the barge corporations had any employees. The only employees of the boat corpora-

tion other than members of the crews, are as follow:

| Name of employee | Name of corporation-employer |
|---|---|
| Keith Edwards | Christine Towing Co. |
| J. A. Hendricks (Maintenance) | "        "        " |
| Vera McNeilly (Bookkeeper) | Green Bay Transportation |

(Tr. 449–457; P. Ex. 4, pp. 24–42).

Messrs. Edwards and Hendricks were also employees of either Barge Transport Co. or Edwards Transportation Co. and they drew the bulk of their pay from these organizations. (P. Ex. 4, pp. 39–42). The administrative personnel for the organization were employed by either Edwards Transportation Co. or Barge Transport Co. (Tr. 459–75).

The operation of Edwards Transportation Co. and Barge Transport Co., the several partnerships that owned vessels (Wilkins Barge Line, Louisiana Transportation Co., Buffalo Bayou Transportation Co., Barge Delta Joint Venture, and Sterling Barge Line), and the twenty vessel-owning corporations was essentially as follows:

(a) All of the companies utilized the same office address. (G. Exs. 7 & 8, pars. 34).

(b) Edwards Transportation Co. and Barge Transport Co. had telephone listings and were the only two companies known (other than Wilkins Barge Line for a time) to the general public; these two companies acting through Mr. C. W. Edwards obtained all business for the entire group of Edwards' companies. (G. Exs. 7 & 8, pars. 33, Tr. 479–480, 765–67, 852).

C. W. Edwards arranged for the corporations to be formed and arranged for the borrowing of the money to finance the construction of 20 boats and barges involved in this suit.

Edwards, in all but two of the companies, owned the majority of the stock. He personally solicited all of the business that was obtained for all of the companies. He personally directed which company would perform the services that were performed. There were no written or formal negotiations or contracts between Edwards Transportation Co. and/or Barge Transport Co. and the five partnerships and twenty vessel-owning corporations. Records governing all the transactions were maintained by either Edwards Transportation Co. or Barge Transport Co. Amounts to be collected from the boat corporations and partnership by all of the various barge corporations and partnerships were recorded on the books of the various barge corporations and partnerships as "accounts receivable". The amounts were then entered into the books of account of the boat corporations and partnerships as "accounts payable". Then the boat companies calculated the amounts "owed" them by either Edwards Transportation Co. or Barge Transport Co. for transportation services performed during the preceding month. Such amounts were recorded on the boat companies' books of account as "accounts receivable". (Tr. 458–473, 854–59).

Barge Transport Co. and Edwards Transportation Co. recorded the boat companies' charges as "accounts payable". Barge Transport Co. and/or Edwards Transportation Co. would then bill the person for whom the services were performed, such as Texaco, Inc., Gulf Refining Co., etc. When the money covering the invoices was received by Edwards Transportation Co. and/or Barge Transport Co., they drew checks on their respective bank accounts to pay the boat companies; the boat companies deposited the checks and drew checks of their own in favor of the barge companies. All of this bookkeeping work was accomplished in one office by five or six bookkeepers who were employees of Edwards Transportation Co. and/or Barge Transport Co. Books of account were maintained for each of the twenty new corporations and, of course, bank accounts were maintained. (Tr. 458–473, 854–59).

C. W. Edwards was a very astute businessman, keenly aware of the advantages to be obtained from the incorporation

of each of the vessels constructed during the period of 1955 to 1960. He was also greatly desirious of obtaining as much tax release as possible because he was then in a 90% plus income tax bracket. He was quite infirm and was of an advanced age. Mr. Keith Edwards, the only child of C. W. Edwards, stated that he was not at all concerned during the 1950's whether the next vessel or any vessel were placed in an existing corporation or in a new corporation.

C. W. Edwards was bitterly resentful of the fact that he was compelled to pay such a high percentage of his income out in federal taxes. The question that Plaintiff raised with reference to liability is not sustained by the claims for personal injury and property damage paid during the period material hereto.

An attempt to obtain tax advantages on two other questions, to-wit: depreciation of vessels and entertainment expenses, significantly shows his desire to avoid federal taxes.

In the case of Taylor v. Standard Gas & Electric Co., 96 F.2d 693 (C.A. 10th Cir.) reversed on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939), the Court held that in determining if a subsidiary is a mere instrumentality of the parent, many factors are relevant and some of the factors generally considered by courts are:

"When the operations of the plaintiffs are compared with the factors listed in the foregoing table, it becomes obvious that in any tort action, the plaintiffs were in greater danger of having their separate corporate existence ignored for the purpose of liability than in having a court find "ways of circumventing the Limitation [of Ship Owners' Liability] Act.""

In this case, the only evidence that tax evasion or avoidance was not the principal motive behind the separate incorporation of the various barges and vessels acquired by the Edwards group in 1955 and subsequent years was the unsupported statements of Mr. Edwards, his son, his employees and agents. In American Properties, Inc. v. Commissioner, 28 T.C. 1100 (1957), the court, after noting that the issue present in that case also turned upon a question of intent, stated (p. 1111):

"The statement of an interested party of his intention and purpose is not necessarily conclusive. Helvering v. National Grocery Co., 304 U.S. 282 [58 S.Ct. 932, 82 L.Ed. 1346], affirming 35 B.T.A. 163. In R. L. Blaffer & Co. [v. C. I. R.], 37 B.T.A. 851, affd. (C.A.5) 103 F.2d 487, certiorari denied 308 U.S. 576 [60 S.Ct. 91, 84 L.Ed. 483], we stated that one's categorical statement may be of less weight than the facts and circumstances which affect it and that "[t]o be skeptical of the weight to be accorded an interested witness' statement in view of other evidence is not the same as wholly to reject the statement as if it were dishonest.""

At trial, plaintiffs offered only the self-serving testimony of Mr. Edwards, his son, his employees, and his attorneys in an attempt to establish that tax avoidance played no part in the formation of a separate corporation for each barge or vessel acquired by the Edwards fleet. The principal thrust of this testimony was to the effect that the various barges and vessels of the Edwards fleet were separately incorporated for the purpose of limiting exposure to liability for claims arising out of the operation of the vessels. Plaintiffs also contend that the separate incorporation of barges and vessels reduced the possibility of the entire Edwards fleet being tied up by labor disputes.

Although defendant served numerous subpoenas duces tecum upon the plaintiffs in an effort to compel them to produce documentary evidence supporting their alleged purposes for the formation of multiple corporations, the only item produced in response thereto was a letter from plaintiffs' admiralty attorney dated December 7, 1961, long after the tax years involved, and contemporaneously with the assertion of the multiple corpo-

ration issue by the Internal Revenue Service.

With regard to Christine Towing Company and Naptha Barge Company, plaintiffs have clearly failed to establish that the obtaining of additional surtax exemptions was not their principal purpose for separately incorporating each vessel. C. W. Edwards testified at trial that Keith Edwards decided to use multiple corporations in these two instances (Tr. 218); but Keith Edwards testified that he could not care less whether the vessels were placed in a corporation or a partnership (Tr. 1369–1370). The Government is entitled to prevail as to Christine Towing Company and Naptha Barge Company in default of any evidence covering intent with regard to those entities.

Although plaintiffs did put on some general testimony as to the purpose behind the formation of the remaining 18 corporations, such testimony will not stand the test of critical examination. All of plaintiffs' witnesses spoke of "liability from claims" as the significant reason motivating formation of the corporations. The limitation of liability which plaintiffs asserted as the purpose of incorporating each vessel, however, already existed to a substantial extent under the laws of the United States. The Act of March 3, 1851, c. 43, 9 Stat. 635, commonly known as the Limitation of Ship Owners' Laibility Act (46 U.S.C. §§ 183 through 196) provides that a ship owner could limit his liability to the value of his vessel in all instances where he was not personally privy to the tort committed or had knowledge of the liability incurred. Although Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957), and related cases, may have increased an employer's liability, as previously understood in the industry, for injuries to employees under the Act of April 22, 1908, c. 149, 35 Stat. 165, as amended in 45 U.S.C. §§ 51 through 60 (commonly known as the Employers' Liability Act), and the Act of June 5, 1920, c. 250, 41 Stat. 933 (46 U.S.C. § 688) (commonly known as the Jones Act), those cases were not decided until February 25, 1957, some two years after the decision was made in 1955 to separately incorporate the plaintiffs' vessels.

■ Although plaintiffs' witness, Mr. Frank Emmett, testified that "courts are finding ways of circumventing the Limitation [of Ship Owners' Liability] Act" (Tr. 552, 553), he failed to point out with equal vigor that courts are similarly ignoring the separate corporate existence of entities such as the plaintiffs when to do so furthers the ends of justice. The principle is well established that a corporation which exercises actual control over another and operates the latter as a mere instrumentality or tool is liable for the torts and obligations of the corporation thus controlled. Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157 (C.A. 7 Cir., 1963); Kimberly Coal Co. v. Douglas, 45 F.2d 25 (C.A. 6 Cir., 1930); Buie v. Chicago, R. I. & P. R. Co., 95 Tex. 51, 65 S.W. 27 (1901); Taylor v. Standard Gas & Electric Co., 96 F.2d 693 (C.A. 10, 1938), rev'd on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). In Taylor v. Standard Gas & Electric Co., *supra*, the court noted (p. 704) that in determining if a subsidiary is a mere instrumentality of the parent, many factors are relevant; and some of the factors generally considered by courts are:

1. Common stock ownership.

2. Common directors or officers.

3. Financing of the subsidiary by the parent.

4. The incorporation of the subsidiary being caused by the parent.

5. Grossly inadequate capital for the subsidiary.

6. Payment by the parent of the salaries and other expenses or losses of the subsidiary.

7. The subsidiary receiving no business except that given to it by the parent.

8. The parent using the subsidiary's property as its own.

9. The directors or officers of the subsidiary not acting independently in the interest of the subsidiary but taking their orders from the parent in the latter's interest.

When the operations of the plaintiffs are compared with the factors listed in the foregoing table, it becomes obvious that in any tort action, the plaintiffs were in greater danger of having their separate corporate existence ignored for the purposes of liability than in having a court find "ways of circumventing the Limitation [of Ship Owners' Liability] Act."

If the testimony of the plaintiffs' witnesses were taken at face value, it would appear that the major business concern of the Edwards group was the limitation of liability. Such testimony, however, loses much of its impact in light of the fact that Edwards Transportation Company, the *largest* operating unit of the Edwards group, has carried on business *as a partnership* since the mid-1930's. The next largest unit of the Edwards group was Barge Transport Company, which was organized in 1939, and which operated two tugboats, five barges, and one small boat without the necessity of separate corporations for each vessel. See paragraph 5 of the Court's memorandum opinion. C. W. Edwards' lack of concern about the limitation of liability is amply demonstrated by the Edwards Fleet's use of the partnership form of doing business with the barges and vessels owned by Barge Delta Joint Venture, Buffalo Bayou Transporation Company, Wilkins Barge Line, and Louisiana Transportation Company. It is also interesting to note that the largest and most valuable ship in the Edwards fleet, the pushboat "Letha C.," is operated by Sterling Barge Company, a *partnership* comprised of C. W. Edwards and his son, Keith.

In the Pepi, Inc. v. C. I. R. case the Second Circuit recently stated in 448 F.2d 141 at 144:

"In determining whether the principal purpose of an acquisition was the avoidance of tax liability, the fact-finder must scrutinize *all* of the circumstances surrounding the transaction. I.R.C. Reg. § 1.269-3. Once the Commissioner had made the determination that the principal purpose of a transaction was tax avoidance, the taxpayer bears the burden of showing by a preponderance of the evidence that the Commissioner's determination was erroneous. J. T. Slocomb Co. v. Commissioner of Internal Revenue, 334 F. 2d 269, 273-274 (2d Cir. 1964)."

The plaintiffs' argument that the use of separate corporations was a device for labor relations purposes is without merit.

This Court therefore makes the following additional Findings of Fact:

1. On June 13, 1969, the United States Court of Appeals for the Fifth Circuit entered a judgment which remanded the instant case "in part for further proceedings not inconsistent with the opinion of this Court."

2. On November 17, 1969, the Supreme Court of the United States denied plaintiffs' application for a writ of certiorari.

3. The findings of fact contained in the Memorandum Opinion of this Court filed August 30, 1967, are adopted, ratified, and incorporated herein as findings of fact of the Court upon remand.

4. Plaintiffs have failed to establish that the principal purpose motivating the separate incorporation of the various barges and vessels acquired by the Edwards fleet in 1955 and the years subsequent thereto was not the evasion or avoidance of federal income taxes by securing multiple surtax exemptions.

5. The preponderance of the evidence of record establishes that the principal purpose motivating the separate incorporation of the various barges and vessels acquired by the Edwards fleet in 1955 and the years subsequent thereto was the evasion or avoidance of federal income taxes by the securing of multiple surtax exemptions.

In Scroll, Inc. a Florida Corporation, v. Commissioner of Internal Revenue, the United States Court of Appeals,

**428**

Fifth Circuit, decided on August 13, 1971, 447 F.2d 612 at page 616, wherein Chief Judge Brown stated:

"Certainly we must recognize that as a matter of common sense and business acumen experienced corporate executives and their advisers may legitimately attempt to surround the proposed maneuver with factors which maximize at least one of the legitimate business purposes beyond the hope or expectation of the tax purpose. But equally as certain the key to this thorny problem of subjective intent does not lie in methodically characterizing all of the taxpayer's asserted non-tax motives as spurious. Whether legitimate business purposes did in fact induce the transaction, and if so to what extent, whether they were mere window dressing or afterthoughts, or whether the tax-saving purpose outranked any one of the credited business motives are all questions of fact upon which the taxpayer has the burden. American Pipe & Steel Corp. v. Commissioner of Internal Revenue, 9 Cir., 1957, 243 F.2d 125, cert. denied 355 U.S. 906, 78 S.Ct. 333, 2 L.Ed.2d 261. Unless clearly erroneous, the finding of the Tax Court must stand. Commissioner of Internal Revenue v. Duberstein, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218; 26 U.S.C.A. § 7482."

The foregoing constitutes Findings of Fact and Conclusions of Law herein. Any Finding of Fact hereinabove made which also constitutes a Conclusion of Law is adopted as a Conclusion of Law. Any Conclusions of Law herein made which also constitutes a Finding of Fact is hereby adopted as a Finding of Fact.

APPENDIX
Internal Revenue Code of 1954 (26 U.S.C.):

SEC. 269. ACQUISITIONS MADE TO EVADE OR AVOID INCOME TAX.
(a) *In General.* —If—
(1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or

(2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation,

and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then . . . such deduction, credit, or other allowance shall not be allowed. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation.

(b) *Power of Secretary or his Delegate to Allow Deduction, etc., in Part.* —In any case to which subsection (a) applies, the Secretary or his delegate is authorized—

(1) any person or persons acquire, it, or allowance any part of any amount disallowed by such subsection, if he determines that such allowance will not result in the evasion or avoidance of Federal income tax for which the acquisition was made; or

(2) to distribute, apportion, or allocate gross income, and distribute, apportion, or allocate the deductions, credits, or allowances the benefit of which was sought to be secured, between or among the corporations, or properties, or parts thereof, involved, and to allow such deductions, credits, or allowances so

distributed, apportioned, or allocated, but to give effect to such allowance only to such extent as he determines will not result in the evasion or avoidance of Federal income tax for which the acquisition was made; or

(3) to exercise his powers in part under paragraph (1) and in part under paragraph (2).