AMERICAN PIPE & STEEL COR-
PORATION, Petitioner,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent.

No. 15174.

United States Court of Appeals
Ninth Circuit.

April 17, 1957.

Rehearing Denied June 4, 1957.

M. Mitchell Bourquin, George DeLew, William B. Boone, San Francisco, Cal., for petitioner.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Walter R. Gelles, Joseph F. Goetten, Washington, D. C., for respondent.

Before ORR, FEE, and BARNES, Circuit Judges.

ORR, Circuit Judge.

Petitioner is a corporation principally engaged in the steel fabricating business. In 1943 it acquired the capital stock of a corporation known as Palos Verdes Estates, Inc., hereafter Palos Verdes, and that company became a wholly-owned subsidiary of American Pipe. Thereafter, American Pipe and Palos Verdes filed consolidated returns for the years 1943, 1944, 1945, and 1946. The Commissioner of Internal Revenue determined a deficiency in the taxes paid under the consolidated returns for 1944, 1945, and 1946, by disallowance of the claimed tax benefits resulting from the acquisition of control of Palos

Verdes. The Commissioner held that the principal purpose of the acquisition was to avoid or evade Federal income and excess profits taxes within the meaning of Section 129 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 129.

American Pipe petitioned the Tax Court for a redetermination of the deficiency. Issues were joined and a hearing had before the Tax Court, which resulted in the denial by that court of relief to American Pipe. We are called upon to review that decision.

The Tax Court seems to have incorporated into its findings a review of all the evidence introduced at the trial. It ultimately concluded that American Pipe had not met its burden of establishing that the holding by the Commissioner, that evasion or avoidance of income and excess profits taxes by securing the benefit of deductions, credits, or other allowances which it would not otherwise enjoy, was the principal purpose for which American Pipe acquired ownership of Palos Verdes, was erroneous.[1]

In addition to the finding of failure of proof on the part of American Pipe, the Tax Court in its opinion made the following statement:

"The Commissioner having determined that the tax benefit to be gained was the principal purpose behind the acquisition, it was petitioner's burden to prove that such determination was erroneous. After a careful study of the record made, we have concluded that petitioner has not successfully carried his burden of proof. We have accordingly so found."

It is contended that the ultimate finding of the Tax Court, together with the quoted statement from its opinion, do not constitute an express and sufficient finding of fact upon which to base the Tax Court's decision. It is the contention of petitioner that the finding of the Tax Court does no more than say that the presumption of correctness which attaches to the determination of the Com-

missioner still stands in the case, and was not overcome. We do not so read the findings. The presumption necessarily disappeared upon the introduction of evidence. The Tax Court acted upon evidence produced by the petitioner and the Commissioner at the hearing, and took no account of the presumption; its findings are based on the evidence produced at the hearing.

Our attention is directed by petitioner to the case of Hemphill Schools, Inc., v. Commissioner, 9 Cir., 1943, 137 F.2d 961. That case is clearly distinguishable from the instant case. There the court was concerned with a determination by the Commissioner that the taxpayer corporation was availed of for the purpose of preventing the imposition of the surtax upon its shareholders within the meaning of Section 102 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 102. The Tax Court stated in that case:

"The evidence does not overcome the determination of respondent that petitioner was availed of for the purpose of preventing imposition of surtax upon its shareholders. * * * *"

The Tax Court treated the determination of the Commissioner as evidence. No such situation appears here. The evidence adduced at the hearing was the sole consideration of the Tax Court. It found as follows:

"On the basis of the foregoing facts, we arrive at the ultimate conclusion that the evidence does not establish that respondent erred in holding that the evasion or avoidance of income or excess profits taxes by securing the benefits of deductions, credits or other allowances which it would not otherwise enjoy was the principal purpose for which American Pipe acquired the capital stock of Palos Verdes."

■■ Petitioner, having invoked the jurisdiction of the Tax Court, entered the hearing burdened with the duty of establishing by at least a preponderance of

---

1. The decision of the Tax Court is reported at 25 T.C. 351.

the evidence that the determination made by the Commissioner was erroneous.[2] The Tax Court's finding in this respect is an express finding of failure of proof, which, if substantially supported by the evidence requires an affirmance of its decision.[3]

An examination of the record presents this picture:

With the onset of World War II, American Pipe was on the threshold of obtaining many profitable Government war contracts in the metal fabricating field. On September 3, 1942, it received a Government contract amounting to $3,500,000, for the manufacture of gas tanks. Although the contract was later cancelled by the Government in late 1943, the record discloses American Pipe had a backlog of Government prime and subcontracts of $124,603.29 on December 31, 1943, and a total of $1,892,144.92 of Government contracts awarded during 1944. In short, the prospective profits from war contracts loomed large for American Pipe.

Palos Verdes had been in poor financial condition since 1936. Its principal assets were 695 residential lots located near Palos Verdes, California. The lots had been held by the corporation for many years,[4] and had a tax basis in excess of $430,000. Their market value, as determined by sale of the lots in December, 1943, and January, 1944, was approximately $25,000.

American Pipe acquired the Palos Verdes stock through a nominee, one Robert P. Archer, employed by American Pipe ostensibly as an accountant and expediter for Government contracts. American Pipe advanced funds to Archer, who began purchasing Palos Verdes shares in 1943. Many outstanding shares were acquired through a general offer of $2 per share, although Archer himself testified that the shares had been selling between 25 and 45 cents per share on the market. After acquiring a controlling interest in Palos Verdes, the remaining shareholders were forced out by a large assessment.

On December 2, 1943, Archer, who took legal title to the Palos Verdes shares, relinquished them to American Pipe upon cancellation of his indebtedness for the funds advanced to purchase the shares. Immediately, the fiscal year of Palos Verdes was changed to coincide with the calendar year of American Pipe. Less than three weeks later, on December 23, 1943, a liquidation sale of the Palos Verdes lots was held. 451 of the lots were sold to one Carl H. Dahlberg for his personal note for $18,000.[5] The tax loss from this sale amounted to $232,781.00. On January 15 and 16, 1944, most of the remaining lots netted $16,185.00 at a public auction, resulting in tax losses of $167,612.91.

Thus, for a total cost of $11,248.96 to American Pipe, it acquired tax losses of $400,393.91. American Pipe caused Palos Verdes to file a consolidated return for the period December 3, 1943, to December 31, 1943, and for the years thereafter. The resulting offset of American Pipe's gains with Palos Verdes losses,

---

2. Tax Court Rule 32, 26 U.S.C.A. (I.R.C. 1954) § 7453; Helvering v. Taylor, 1935, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Greenwood v. Commissioner, 9 Cir., 1943, 134 F.2d 915; 9 Mertens, Federal Income Taxation § 50.61–2 (Supp.1956).

3. Wilmington Trust Co. v. Helvering, 1942, 316 U.S. 164, 62 S.Ct. 984, 86 L.Ed. 1352; Gensinger v. Commissioner, 9 Cir., 1953, 208 F.2d 576; Grace Bros., Inc., v. Commissioner, 9 Cir., 1949, 173 F.2d 170.

4. The lots had been transferred by tax deeds to the State of California in 1938. A decree issuing from an action instituted by Palos Verdes in 1943 allowed redemption of the lots upon payment of delinquent taxes within six months. Most of the lots were redeemed.

5. Dahlberg, now a vice-president of American Pipe, reconveyed the lots to the president of American Pipe in 1948 in extinguishment of his debt to American Pipe for funds advanced to pay back taxes due on the lots. Thus, it appears the sale to Dahlberg was a mere sham, designed to accomplish a quick sale of the lots to gain the tax benefits.

and carryovers of net operating losses, is dramatically displayed in the following table and explanation taken from the Tax Court's findings of fact:

| Taxable Year | American Pipe Net Income, or (Loss) | Palos Verdes Net Income, or (Loss) | Consolidated Net Income, or (Loss) |
|---|---|---|---|
| 1943 | $ 16,880.52 | ($245,800.74) | ($228,920.22) |
| 1944 | 96,515.44 | ( 419,329.90) | ( 322,814.46) |
| 1945 | 144,909.04 | ( 272,164.94) | ( 127,255.90) |
| 1946 | 316,644.17 | ( 148,632.80) | ( 168,011.37) |

"The amounts stated in the Palos Verdes column and in the Consolidated column for the taxable year 1944, reflect a carry-over of claimed net operating loss of Palos Verdes for the period December 3, 1943, to December 31, 1943, deducted on the consolidated return filed for the year 1944 in the amount of $215,639.88. The amounts stated in the Palos Verdes column and in the Consolidated column for 1945 and 1946 reflect carry-overs of claimed net operating losses for the first and second preceding years of Palos Verdes deducted on the consolidated returns filed for 1945 and 1946, in the amounts of $322,814.46 and $107,174.58, respectively."

Petitioner argues that the acquisition of Palos Verdes was motivated by the business purposes recited in a letter from Jack Lane, president of American Pipe, to his stockholders, proposing acquisition of Palos Verdes. The letter listed the advantages of said acquisition as giving American Pipe a corporation operating in the real estate field to improve its position in the sale of pipe and casing in real estate developments, and providing an organization for the marketing of postwar metal houses to be constructed by American Pipe.

A close scrutiny of the reasons for the purchase of Palos Verdes reveals that any corporation formed to do business in the real estate field would have satisfied the alleged needs of American Pipe. The reasons advanced by petitioner that its acquisition of a practically defunct corporation was the potential value of the lots does not overshadow the conclusion that the acquisition was for a huge potential tax benefit. The fact that within two months of acquisition Palos Verdes was a mere corporate shell is highly significant as militating against petitioner's contention of his nontax motivation.

The findings of the Tax Court are supported by substantial evidence and its decision is therefore affirmed.