Bow Herbert and Nancy Herbert v. Commissioner.
Herbert v. Commissioner
Docket No. 627-62.
United States Tax Court
T.C. Memo 1964-223; 1964 Tax Ct. Memo LEXIS 115; 23 T.C.M. (CCH) 1350; T.C.M. (RIA) 64223; August 24, 1964
George M. Bryant, 668 S. Bonnie Brae St., Los Angeles, Calif. and Walter M. Campbell, for the petitioners. Marion Malone, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined deficiencies in the income tax of petitioners as follows: Fiscal Year Ended
September 30
Amount
1958
$33,000.85
1959
35,880.22
1960
29,364.60
Respondent has conceded that certain payments made to Edna M. Hill during the years here involved are deductible by petitioners. The correct amounts of deductions for medical *116 expenses can be determined in the Rule 50 computation. The two issues remaining for decision are: (1) Did money received by petitioner Bow Herbert from a "public relations" fund constitute taxable income to him under the provisions of section 61(a), Internal Revenue Code of 1954? (2) Was such money disbursed for purposes that entitled the petitioner to offsetting deductions? Findings of Fact Some of the facts have been stipulated by the parties and are adopted as part of our findings of fact. Bow and Nancy Herbert are husband and wife who reside in Palm Springs, California. Their business address is 15472 South Western Avenue, Gardena, California. They reported their income on the cash method of accounting and filed joint income tax returns for the fiscal years ended September 30, 1958, September 30, 1959, and September 30, 1960, with the district director of internal revenue at Los Angeles, California. Bow Herbert (hereinafter called petitioner) is the managing partner of two limited partnerships, known as the Horseshoe Club and the Gardena Club, operating in Gardena, California. Each partnership owns and operates a legalized and licensed draw poker parlor, *117 deriving its income from the rental of seats at tables which are open to the public. Additional income is generated by the operation of restaurants on the premises as well as from chip sales, newsstand and miscellaneous items. During the taxable years in issue Bow and Nancy Herbert were the only general partners in both partnerships. Petitioner managed both clubs. These relationships gave him complete and exclusive control over the maintenance and disbursement of partnership funds. Most of the financial backing for the enterprises came from limited partners and investors who pooled their interests in trusts managed and represented by petitioner as trustee. Petitioner received salary from each club in the following amounts: Year Ending
Horseshoe Club
Gardena Club
9-30-58
$23,850
$20,605
9-30-59
23,400
20,280
9-30-60
26,000
10,920
During the years in issue the clubs paid to petitioner, as General Managing Partner, checks, totaling the following amounts: Year Ending
Horseshoe Club
Gardena Club
9-30-58
$19,500
$13,000
9-30-59
19,500
13,000
9-30-60
19,500
5,000 Such amounts were charged to a "public relations" account on *118 the books of the partnership, but were not disbursed directly to outside sources. Instead, they were periodically deposited by the clubs directly to a bank account segregated from petitioner's other financial affairs and entitled "Bow Herbert Personal Account." The amount in the United California Bank, Crenshaw Branch, was withdrawn by checks prepared by club employees, signed by petitioner, and drawn to cash in all except five instances. No accounting was made by petitioner to the partnerships or to the individual partners with respect to the disbursement of funds from the "Bow Herbert Personal Account." There were several meetings between the limited partners, the petitioner and attorneys for the clubs at which the "public relations" fund was a source of conflict between the petitioner and the limited partners. The limited partners wanted to know where the money was spent. Petitioner would not tell them and refused to disclose the identity of the recipients. In late 1959 this dispute culminated in the limited partners instituting two suits in the Superior Court of Los Angeles County against petitioner demanding an accounting for the partnership money and asking that petitioner *119 be restrained from withdrawing any "public relations" money from the club accounts. The principal objective of the litigation was for the limited partners to gain fiscal control of the clubs. This objective was later accomplished through a partial compromise whereby the limited partners became general partners and acquired cosigning authority on all checks drawn against the clubs' accounts. Financial statements prepared for the fiscal year ended September 30, 1960, by a reputable and national firm of certified public accountants took exception to the "public relations" fund with this comment: These expenditures, as disbursed by Mr. Herbert, being confidential in nature, are not covered by supporting detail in the partnership files, the validity of the expenditures being based strictly on the personal warranty of Mr. Herbert. We were informed by Mr. Herbert that the amount as indicated above was agreed upon by all of the limited partners and Mr. Herbert, general partner and operator of the club, in the early part of 1955. In view of the circumstances, these payments to Mr. Herbert are treated as nondeductible expense in the filing of federal and state partnership income tax returns. *120 Both clubs maintained expense accounts for political and election campaign expenses. Substantial political and election expenses were incurred, particularly during election years or whenever there was a voters' referendum pertaining to card clubs. Both clubs had an account for charitable contributions. Substantial charges were made against these accounts during the years 1958, 1959 and 1960. Contributions were handled through a check request signed by either petitioner or Murray Klein, who were empowered to make donations. The checks were written to the intended payee. Both clubs maintained expense accounts for advertising and goodwill. Three such accounts were maintained. The costs of printing and publishing brochures, club rules for employees, personnel periodicals, goodwill and magazine ads, flowers and the like were charged to these accounts. The partnerships did not claim deductions in their tax returns for the amounts paid to petitioner as "public relations" money, nor did petitioner claim such amounts as deductions on his personal income tax returns. In his notice of deficiency dated December 1, 1961, respondent determined that the "public relations" money constituted *121 income to petitioners and that any disbursement thereof was not deductible for lack of substantiation. Ultimate Findings 1. Petitioner failed to prove that the amounts he received in the form of cash, denominated as "public relations" money, was not an item of taxable income during the fiscal years ended September 30, 1958, 1959, and 1960. 2. Petitioner failed to prove that the "public relations" money he received during the years in issue was expended for tax deductible purposes. Opinion Respondent's determination, as set forth in the notice of deficiency, carries with it a presumption of correctness. The petitioner must overcome the presumption by the introduction of convincing evidence to the contrary. The burden of proof is thus upon the petitioner, and the measure of the sufficiency and weight required to meet this burden is that it be "by preponderance of the evidence." American Pipe & Steel Corp. v. Commissioner, 243 F. 2d 125 (C.A. 9, 1957), affirming 25 T.C. 351 (1955), certiorari denied 355 U.S. 906. On the facts established by this record, we hold that petitioner has failed to meet this burden of proof. We have only the *122 petitioner's uncorroborated testimony to support his contention that some of the "public relations" money was given to various political, charitable and religious organizations which did not want their identity known. He said that some of it was also used to employ "rounders" (people who earn a living at playing cards) to go to other card clubs to play so that they might defend petitioner's character and counteract smear campaigns directed against him and the Horseshoe and Gardena Clubs. Petitioner further testified that he employed these "rounders" by the hundreds; that he expected them to work six days a week; and that he paid them from the "public relations" fund at his apartment between the hours of 10 P.M. and 1 A.M. In short, we think much of petitioner's testimony is incredible. We are unable to accept what he said as substantiation of the expenditure of this money for tax deductible purposes. See Hoefle v. Commissioner, 114 F. 2d 713 (C.A. 6, 1950), affirming a Memorandum Opinion of this Court. Moreover, the petitioner is not aided by the testimony of twelve other witnesses who appeared in this proceeding. All of their testimony combined fails to substantiate any *123 of the "public relations" expenditures because none of them knew what the petitioner did with the money. Office personnel, limited partners and attorneys for the clubs supplied no corroborative evidence. It is significant that there was no accounting for the money in the internal record system of the clubs or of the petitioner. There are no receipts of any kind to support petitioner's claim. The recipients were not named, nor did any appear as a witness. Consequently, there is no credible evidence in the record to establish that "public relations" money was disbursed at all. And, even if disbursed, there is no evidence that the money was spent for the benefit of the partnerships. Section 61(a) of the Internal Revenue Code broadly defines gross income as "all income from whatever source derived." It is agreed by the parties that certain sums of money were charged on the books of the two partnerships as "public relations" expense. The money came into petitioner's hands. Once it got there the only way he could avoid paying income tax on it was to prove that he was entitled to an off-setting deduction by substantiating his expenditure of the money as an ordinary *124 and necessary business expense. This he has failed to do. While the record contains no evidence that petitioner personally profited by an increase in assets or decrease in liabilities, his insistence that this is determinative of the issue before us misses the mark. The failure to trace cash into assets, a burden which the respondent does not have here, does not show that the petitioner had no income. For all we know he may have spent the cash for his personal benefit. Actually there are several facts which tend to destroy this negative inference argued by petitioner. They are: (1) His failure to claim a business expense in both partnership and personal tax returns; (2) the secrecy with which other business partners were treated over an allegedly legitimate expense; (3) his failure to keep accounting records on the fund; and (4) the vagueness of the description of recipients. The reasonable and likely sources for which the "public relations" money could have been used are already accounted for by substantial expenditures recorded in the books and certified audit statements of the Horseshoe and Gardena Clubs. The unlawful disposition of the money was denied by petitioner. And his *125 claim that it was used to pay unidentified "rounders" is not worthy of belief. Lacking substantiation of the claimed expenses, we find that the respondent did not err. The question raised by the petitioner on brief as to whether the partnerships were entitled to an additional deduction for the "public relations" money paid to petitioner is not properly before the Court. The issue was not raised in the notice of deficiency, by the petition, nor by any other pleading. However, we add for completeness that the amounts spent would not be deductible by the partnerships if the petitioner took money from the partnerships in the capacity of one not a partner. See section 707 of the 1954 Code. On the other hand, if petitioner took the money as general partner, then the expenditures would be deductible by the partnerships only to the extent substantiated as allowable partnership deductions. As we have previously stated, the record fails to establish any substantiation of the expenditures as ordinary and necessary business expenses. Viewing the totality of the evidence presented, we sustain respondent's determination that the "public relations" money received by petitioner was taxable income *126 to him during the years in controversy and that no part thereof is deductible as an ordinary and necessary business expense. Decision will be entered under Rule 50.