ESTATE OF FRANK FITTL, DECEASED, IRMA ANN FITTL, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Fittl v. Commissioner
Docket No. 33676-84.
United States Tax Court
T.C. Memo 1986-452; 1986 Tax Ct. Memo LEXIS 161; 52 T.C.M. (CCH) 564; T.C.M. (RIA) 86452; September 17, 1986. Joseph Ginsburg and Larry V. Albers, for the petitioner. J. Anthony Hoefer, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $94,800.21 in petitioner's Federal estate tax. At issue is the fair market value at the date of the decedent's death of four parcels of real estate. FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Frank Fittl (decedent) died on November 4, 1980 (the valuation date). Irma Ann Fittal (petitioner), decedent's sister and personal representative of his estate, timely filed the estate tax return (Form 706) with the *162 Internal Revenue Service Center in Ogden, Utah. Petitioner resided in Lincoln, Nebraska, at the time the petition was filed. Items in Dispute
Decedent's estate included interests in four parcels of farmland located in Saline County, Nebraska (designated for convenience as Tracts No. 1 through No. 4). Tract No. 1 consists of 160 acres of level and gently rolling farmland in which decedent possessed an undivided one-half interest. Tract No. 2 consists of 120 acres of rolling dry farmland. Tract No. 3 consists of 78.5 acres of farmland, partially irrigated by a well on Tract No. 4, and containing a small frame house and several outbuildings. Tract No. 4 consists of 60.23 acres of level irrigated farmland, in which decedent possessed an undivided one-half interest. In its return, the estate reported that decedent's interests in Tracts No. 1 through No. 4 were worth $42,217.50, $69,690, $75,485, and $31,152.50, respectively. In his notice of deficiency, respondent determined that, on the valuation date, Tracts No. 1 through No. 4 were worth $100,800, $180,000, $157,000, and $54,207, respectively. Rychecky
Edward S. Rychecky (Rychecky), petitioner's expert, was at *163 the time of trial a licensed realtor and appraiser from Crete, Nebraska. Rychecky has worked as a realtor and appraiser for 30 years. Although Rychecky was personally familiar with the four parcels of land in November 1980, he did not appraise the property until petitioner requested him to do so in connection with this case. He did not prepare a formal report but did make some handwritten schedules and notes relating to appraisal of the parcels. Rychecky classified the land within each parcel, and assigned a per acre value to each classification, or "value group." He based each classification's value solely on comparable sales. Rychecky then multiplied the number of acres thus classified by the per acre value assigned to each class. Although Rychecky believed that a prospective purchaser of farmland would be interested in its income, he did not use the income capitalization method to assign value to each land classification. At trial, Rychecky could specifically recall only two of the sales that he had determined were comparable. Comparable sales are not mentioned in his notes or schedules. Rychecky determined that the 1982 auction sales of properties held by the Plachy estate *164 were not comparable. Rychecky determined that the date of death value of Tract No. 1 was $113,600. This opinion was based on his determination of the following classifications within the tract: 106 acres of "Number Two dry land," 14 acres of "second grade dry land," and 36 acres of "Number Three pasture land." [1] Without explaining the significance of these classifications, Rychecky stated at trial that the 106 acres of "Number Two dry land" were worth $630 per acre; he did not state a value for the other two classifications of land. In notes attached to his appraisal schedule, Rychecky had determined that the three classifications of land were worth $850, $650, and $400 per acre, respectively. His appraisal schedule appears to value the same three classifications of land at $630, $560, and $260 per acre, respectively. The amounts that appear on Rychecky's schedule yield an overall value of $83,980 for Tract No. 1, while the amounts in his notes yield an overall value of $113,600. Rychecky did not reconcile any of these differences or explain why he had assigned any of these particular values to his classifications. *165 Rychecky classified 40 acres of Tract No. 2 as "Number One dry land," and the remainder of the 120 acre parcel as "Two and Three dry land." In his testimony, Rychecky determined that the date of death value of Tract No. 2 was $85,550. His appraisal schedule, however, indicates a value of $70,690, and the notes attached to the schedule suggest that the property was worth $89,050. Again, Rychecky did not explain the significance of these classifications or inconsistencies. Tract No. 3 did not contain a working irrigation well, but was irrigated with water from a well on Tract No. 4. The well that had provided water for domestic use was inoperable. The tract contained an 80-year old home with a crumbling foundation and several equipment buildings too small for modern farm machinery. Rychecky's notes attached to his appraisal schedule appear to value the land at $55,875. In his testimony, Rychecky stated that the value of the buildings was $3,500; he did not specify an overall value for the Tract. Rychecky's appraisal schedule suggests that he valued Tract No. 4, a parcel irrigated and tillable, at either $62,305 or $72,270. He did not explain his valuation of this tract at *166 the trial. Yudelson
Michael J. Yudelson (Yudelson), one of respondent's experts, was at the time of trial an Internal Revenue Service estate tax attorney who had examined Nebraska estates for 20 years. He taught Internal Revenue Service courses in estate tax law and valuation. Yudelson examined approximately 30 to 50 estates involving Saline County land from 1975 to 1980 and from 20 to 30 estates involving Saline County land from the date of decedent's death to the date of trial. He had continuously maintained records of land values in Saline County from the late 1960's. Farmland valuation occupies the bulk of his time. Yudelson determined that the fair market value of the estate's interest in the four tracts was $450,000. He specifically considered the value of the decedent's undivided one-half interests in Tracts No. 1 and No. 4. Yudelson examined data concerning comparable sales, sales/assessment ratios, and the values of land classifications, but did not employ the capitalization of income method. According to Yudelson, although a prospective buyer of farm property might have considered the property's income, the capitalization of income method of valuation was *167 not commonly used in Nebraska's inflationary real estate market of the late 1970's and early 1980's. Yudelson determined that the Plachy estate sales were not representative of real estate values in Saline County on November 4, 1980. He concluded that Saline County land values peaked in the late summer or early fall of 1981, and that May 1982 auction sales of property held by the Plachy estate reflected a price break that had occurred 6 months earlier. Yudelson found that, as of the date of decedent's death, farm property in Saline County was selling at approximately 3 to 3-1/2 times its assessed value. Only 18 months later, property auctioned by the Plachy estate was sold for less than twice its assessed value. Jones
Larry D. Jones (Jones), respondent's other expert, is a qualified real estate appraiser and farm manager from Aurora, Nebraska. Jones had appraised farm property in southern Nebraska for approximately 20 years. Jones attended special seminars on real estate appraisal work, was a member of various professional societies, and had previously testified as an expert witness on real estate appraisals. Jones used comparable sales to value the estate's properties *168 as of the date of decedent's death. Because he believed that rapidly fluctuating corn and fertilizer prices had destabilized farm income, Jones did not use the income capitalization method of valuation. Jones checked local courthouse records for all sales of properties within 3 to 5 miles of the estate's properties and based his valuation on what he determined to be the sales of the most comparable properties in that area at the pertinent time. Jones selected 46 properties identified in his report as "Index Sale # 1" through "Index Sale # 46." Not all of these index sales were comparable to the subject properties, but Jones selected the most comparable sales for valuing each of the four parcels. He made adjustments to the sales figures to reflect any significant differences between the particular index sale and the particular parcel being valued. Because real estate prices rose in 1979, and declined in 1982, Jones included index sales occurring in 1979 and 1982 in his report, but not in his appraisal. Jones did not rely on the Plachy estate sales because these sales occurred in 1982, and because, after personally inspecting the Plachy properties, he had concluded that they were *169 not comparable to the estate's properties. In evaluating the various index sales and subject properties, Jones considered the following information and data: (1) land classifications assigned by the county assessor's office; (2) the number of acres shown on the records of the county assessor; (3) the appraisal values used by the county assessor; (4) soils data for Saline County; (5) soils classifications of the index properties and of the estate's properties, based on soil surveys prepared by the Soil Conservation Service of the Department of Agriculture; and (6) courthouse records of sales prices. Jones confirmed the sales price of each index property by checking with the Federal Land Bank, the Farmers' Home Administration, local attorneys, or local brokers. To value Tract No. 3, Jones multiplied its 78.5 acres by their estimated per acre irrigated values. From local sources, Jones obtained detailed estimates of drilling expenses, and of the costs of a pump, a motor, and each component of an irrigation well. Jones subtracted these costs from Tract No. 3's estimated irrigative value to determine its estimated unirrigated value. Jones adjusted this value upwards to reflect the *170 favorable topography of Tract No. 3 and his estimate of what its buildings were worth. Jones viewed, but did not enter, the buildings on Tract No. 3. He based his $50,000 estimate of the buildings' value on their county assessment values and on the county assessment value/sales price ratios of building on two of the index properties. Jones did not personally inspect the buildings on the two index sale properties. The record does not reveal how or why he determined that these buildings were comparable to the buildings on Tract No. 3. In determining the value of the estate's undivided one-half interest in Tracts No. 1 and No. 4, Jones consulted with several Nebraska attorneys. Jones was told that the cost of a legal partition would range from a low of 7 percent of the value of the partitioned property, to a high of 12 percent. On the basis of his own professional background and the statements of his sources, Jones concluded that, although there was a limited market for fractional interests in farm property, the costs of partition sale completely reflected the reduced value of such interests. Jones estimated the total values of Tracts No. 1 and No. 4, divided the fair market *171 values of each tract by two, then discounted the values of the estate's interests by 10 percent to reflect the costs of partition. ULTIMATE FINDINGS OF FACT On the valuation date, the fair market values of decedent's interests in Tracts No. 1 through No. 4 were $100,800, $180,000, $110,500, and $54,207, respectively. The total fair market value of decedent's interest in Tracts No. 1 through No. 4 was $445,507. OPINION Property includable in the gross estate is generally included at its fair market value on the date of the decedent's death. Sec. 2031(a); [2] sec. 20.2031-1(b), Estate Tax Regs. Fair market value is defined as the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all relevant facts. United States v. Cartwright,411 U.S. 546, 551 (1973); sec. 20.2031-1(b), Estate Tax Regs. Fair market value is a question of fact, and the trier of fact must weigh all relevant evidence and draw appropriate inferences. Hamm v. Commissioner,325 F.2d 934, 938 (8th Cir. 1963), *172 affg. a Memorandum Opinion of this Court; Estate of Andrews v. Commissioner,79 T.C. 938, 940 (1982). Petitioner has offered little evidence in support of her contentions. She argues that, once she has offered some evidence in support of her attacks on respondent's determination, the burden of persuasion is on respondent. Petitioner also contends that respondent erred in failing to capitalize income produced by the property, in failing to properly account for decedent's fractional interests in Tracts No. 1 and No. 4, in improperly valuing Tract No. 3 as an irrigated farm, and in ignoring certain allegedly comparable sales. Petitioner has not, however, offered evidence sufficient to affirmatively prove these contentions. Burden of Proof
A presumption of correctness attaches to respondent's determination of deficiency. *173 Welch v. Helvering,290 U.S. 111 (1933).This presumption is a procedural device which requires petitioner to come forward with enough evidence to support a finding contrary to the determination. Rockwell v. Commissioner,512 F.2d 882, 885 (9th Cir. 1975), affg. a Memorandum Opinion of this Court; see Fed. Rule of Evidence 301. Petitioner also bears the burden of proof. Rule 142(a). This burden is a burden of persuasion; it requires petitioner to demonstrate the merits of her claim by at least a preponderance of the evidence. Rockwell v. Commissioner,supra.The respondent's presumption and the petitioner's burden of proof thus impose two separate and distinct obligations: (1) the burden of going forward, and (2) the burden of persuasion. Petitioner erroneously claims to carry her entire burden by fulfilling the first of these obligations. To rebut respondent's presumption, petitioner must introduce some substantial evidence tending to show that respondent was wrong. Where petitioner has not offered evidence sufficient to rebut *174 respondent's presumption, respondent prevails. Rockwell v. Commissioner,supra.The burden of going forward with the evidence will shift to the respondent if his determination is shown to be arbitrary, which is not the situation here. Compare Helvering v. Taylor,293 U.S. 507, 514 (1935). Petitioner has failed to introduce evidence in support of many of her contentions. We cannot make findings favorable to petitioner purely on the basis of conjecture or argument on brief. See Rule 143(b). Where petitioner has carried her burden of going forward, she must still carry her ultimate burden of proof or persuasion. Rockwell v. Commissioner,supra;American Pipe and Steel Corp. v. Commissioner,243 F.2d 125, 126 (9th Cir. 1957), affg. 25 T.C. 351 (1955). Petitioner's reliance on Cullers v. Commissioner,237 F.2d 611 (8th Cir. 1956), revg. a Memorandum Opinion of this Court; Commissioner v. Riss,374 F.2d 161 (8th Cir. 1976), affg. in part and revg. in part a Memorandum Opinion of this Court; and Silverman v. Commissioner,538 F.2d 927 (2d Cir. 1976), *175 affg. a Memorandum Opinion of this Court, is misplaced. Cullers,Riss, and Silverman clearly speak only of the consequences that might be faced by respondent if he failed to present evidence after petitioner has rebutted the presumption in respondent's favor. Regardless of the burden of proof, however, for the reasons discussed below, we find respondent's valuation evidence and arguments more reliable and persuasive than petitioner's. Income Capitalization
Petitioner alleges that respondent's determination is erroneous because respondent failed to consider the limited income derived from the estate's property. Capitalization of income is not the exclusive method of valuation for farm property. Although income earned by property may be reliable evidence of its value, respondent must consider all relevant factors and elements of value as of the applicable valuation date. Sec. 20.2031-1(b), Estate Tax Regs. The evidence justifies only a conclusion that in market conditions in Nebraska on the date of decedent's death, the income capitalization method was unreliable and *176 was not, in fact, considered by prospective purchasers of farm property. Yudelson and Jones each considered and reasonably rejected the capitalization of income method. Petitioner presented no evidence indicating the significance of income to a prospective purchaser of the estate's property. Petitioner's own expert testified that he had not considered the income earned by the property, and implied that, although a prospective purchaser might have been interested in the property's income, reliable information would have been difficult to obtain. In any event, petitioner has not presented evidence in sufficient detail or of sufficient reliability to support the use of the income capitalization method. Patrick J. Craven, an attorney of the firm that prepared the decedent's last income tax return, testified that the net farm income reported for 1980 was $2,267.81. He provided no detail as to the source of the income, the parcels to which it related, the terms under which it was received, or any information that it was representative over the period that a prospective buyer would have considered, i.e., the several years preceding the date of death. Under the circumstances, there *177 is no factual predicate for use by the Court of a method not used by any of the experts. The Parties' Valuations
Petitioner and respondent each rely primarily upon the valuations prepared by their respective experts. Expert opinion is admissible if it will assist the trier of fact to understand evidence that will determine a fact in issue. See Fed. Rule of Evidence 702. The trier of fact must weigh such evidence in light of the demonstrated qualifications of the expert and all other credible evidence. Estate of Christ v. Commissioner,480 F.2d 171, 174 (9th Cir. 1973), affg. 54 T.C. 493 (1970). We are not bound by the opinion of any expert witness when that opinion is contrary to our judgment. Kreis' Estate v. Commissioner,227 F.2d 753, 755 (9th Cir. 1955). We may embrace or reject expert testimony, whichever, in our best judgment, is appropriate. Helvering v. National Grocery Co.,304 U.S. 282 (1938). We may find one expert more persuasive on one element of valuation and another more persuasive on another element. *178 Petitioner claims that respondent erred in failing to consider the fractional nature of decedent's interests in Tracts Nos. 1 and No. 4.When neither the taxpayer nor respondent discount the value of a fractional interest in land, we may value the interest at its proportionate value of the whole as established by the evidence. [3] Jones, respondent's expert, however, discounted the proportionate value of decedent's fractional interest by the estimated costs of partition. Although petitioner asserts that respondent's valuation of these fractional interests is for various reasons erroneous, petitioner presented no evidence in support of her contentions. If petitioner argues for a greater discount from the proportionate value of the entire property, petitioner must prove the greater discount. [4] Rychecky, petitioner's own expert, failed to discount the proportionate value of decedent's fractional interests, and petitioner has otherwise failed to prove a discounted value other than that allowed by respondent. *179 Petitioner also asserts that respondent's determination of deficiency is incorrect because respondent valued Tract No. 3 as irrigated land when, in fact, Tract No. 3 does not contain a source of water and must be irrigated with water from a well located on Tract No. 4. In his appraisal report, respondent's expert clearly accounted for this parcel's lack of a producing well. Finally, petitioner contends that respondent failed to consider the sales prices of certain properties comparable to Tracts No 1 and No. 4, that respondent erroneously considered the sales prices of certain properties not comparable to Tracts No 1 and No. 4, and that respondent consequently attributed "wholly excessive valuations" to the Tracts No. 1 and No. 4. The Court's task is to determine the credibility of any lay or expert witness based upon objective facts, the reasonableness of the testimony, the consistency of the statements made by the witness, and, in some cases, the demeanor of the witness. In the present case, as in the ordinary case, any doubts about the reliability of an expert's testimony are based on the failure of the facts to support his assumptions and his ultimate opinion rather than *180 any doubt as to whether the expert is expressing a truthful opinion. At trial, during direct examination of her witness, petitioner submitted photocopies of what appear to be Rychecky's appraisal schedules and notes. These schedules and notes do not set forth the facts or data on which his opinion was based, or the reasons for his conclusions. In many instances, as set forth in our findings of fact, Rychecky's materials appear to be internally inconsistent. Certain calculations in the notes appear to be at odds with figures on the appraisal schedules. The notes and schedules occasionally contradict Rychecky's testimony. Petitioner asserts that her expert concluded that the properties in issue were worth $237,863. This ultimate conclusion is nowhere in Rychecky's testimony, notes, or schedules. Many of Rychecky's assertions undermine petitioner's arguments. Although petitioner argues that respondent failed to consider certain allegedly comparable properties, Rychecky testified that he considered only two of these properties. Although Rychecky testified that he relied solely on comparable sales to value Tracts No. 1 through No. 4, he could recall clearly only these two allegedly *181 comparable sales, and failed to explain why he had concluded that these sales were comparable. He testified that the Plachy estate properties, which the petitioner contends were comparable to Tracts No. 1 through No. 4, were not comparable at all, and implied that the Plachy tracts were too far away to be considered in evaluating the property of Tracts No. 1 through No. 4. Although Yudelson, testifying for respondent, did not testify in detail about the data he had considered in valuing the properties, he did testify persuasively about the decline in Saline County land values that had occurred after decedent's death. The testimony and report of Jones are the most helpful of the expert opinions. [5] The witness' report describes in detail the facts and data on which his opinion was based, and the reasons for his conclusions. His report exhaustively described each index sale and comparable. As a result, we conclude that, with one exception discussed below, his valuation of Tracts No. 1 through No. 4 is reliable and persuasive. *182 Jones admittedly did not inspect the improvements on Tract No. 3. His $50,000 valuation of these buildings was based solely on the sales price/assessed value ratios of buildings on two comparable properties. Since Jones inspected neither the buildings on Tract No. 3, nor the buildings on these comparable properties, he had no basis for determining whether the buildings actually were comparable. Although Rychecky did not anywhere describe with particularity the facts and data on which his $3,500 valuation of these buildings was based, Rychecky inspected the buildings and observed that the foundations of the single family house were crumbling and that the tract did not have a domestic water supply. Rychecky testified without contradiction that Tract No. 3's farm equipment buildings were too small for modern farm equipment. In the absence of any other evidence of the buildings' value, we accept his $3,500 valuation of the buildings on Tract No. 3. We have considered petitioner's other arguments and find that they are without merit. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. He did not assign a value to 4 acres occupied by a road.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect at the date of the decedent's death. All references to "Rules" refer to the Tax Court Rules of Practice and Procedure.↩
3. See Estate of Johnson v. Commissioner,↩ a Memorandum Opinion of this Court dated June 22, 1943.
4. See Estate of Iacono v. Commissioner,T.C. Memo. 1980-520↩.
5. Notwithstanding the direction in the Court's Standing Pre-Trial Order that expert witness reports be prepared and exchanged prior to trial, the parties failed to submit reports for Rychecky or Yudelson.↩