MELVIN TOKUNAGA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tokunaga v. Commissioner
Docket No. 31127-87
United States Tax Court
T.C. Memo 1991-501; 1991 Tax Ct. Memo LEXIS 550; 62 T.C.M. (CCH) 932; T.C.M. (RIA) 91501; October 2, 1991, Filed *550 Decision will be entered for the respondent. Melvin Tokunaga, pro se. Steven M. Roth and Cathy A. Goodson (Campen), for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in and additions to petitioner's 1986 Federal income tax as follows: Additions to Tax Under Secs. [1]
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661(a)
$ 67,869
$ 50,902 *
$ 16,967
As alternatives to his determination of fraud, respondent determined additions to tax pursuant to section 6653(a)(1)(A) and (B) and section 6651(a)(1). The issues that we must decide are: (1) Whether respondent arbitrarily and excessively determined that petitioner received unreported income; *551 (2) whether petitioner's tax underpayment was due to civil tax fraud; (3) whether, in the alternative to the addition to tax for fraud, petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations and for failing to file a tax return; and (4) whether respondent erroneously determined that petitioner is liable for an addition to tax for a substantial understatement of income tax. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference. Melvin Tokunaga (hereinafter petitioner), resided in Canyon Country, California, when the petition in this case was filed. From October 2, 1972, through March 27, 1987, petitioner was employed by the Los Angeles Unified School District (LAUSD). During 1986, petitioner was Deputy Director of the Operations Branch of LAUSD and earned $ 42,624.20 in wages. The Operations Branch provided custodial and gardening materials and services, inter alia, to the various school campuses that made up LAUSD. Petitioner's responsibilities included planning and administering the budget of the Operations Branch. *552 The Operations Branch used purchase orders to obtain materials and/or services (materials) from vendors. These purchase orders were of three types: (1) "M" purchase orders were used for ordering materials already designated in an established contract with a vendor; (2) "X" purchase orders were used to acquire materials in an amount greater than $ 200 per order; and (3) "OL," or low value, purchase orders were used for ordering materials up to an amount greater than $ 200 per order. Each purchase order was a multipage document separated by carbon paper which enabled an original and several copies of the purchase order to be made as the document was filled out. After filling out a purchase order, the Operations Branch would keep an office copy and the receiving copy. The original would be routed to the vendor, and another copy would be routed to the accounts payable section of LAUSD. Once the vendor made delivery, the Operations Branch would acknowledge receipt of the materials on the receiving copy and would send it to the accounts payable section for processing. The accounts payable section would then match their copy of the purchase order with the executed receiving copy, *553 and the invoice from the vendor. If all of the documents were in agreement, then the accounts payable section would begin the process of drawing a check for payment. During 1985 and 1986, petitioner had the authority to obtain materials with purchase orders. He also had the authority to sign, and to delegate to others the authority to sign, for the receipt of materials. At that time, LAUSD's internal procedures required only one signature on the receiving copy to acknowledge delivery. By executing that copy, the signer was certifying that he had inspected the materials designated in the purchase order, and had ascertained that the quantities and qualities were correctly stated therein. Lawndale Nursery
In 1983, Lawndale Nursery commenced doing business with LAUSD by established contract. Under its established contracts, Lawndale Nursery agreed to provide LAUSD with certain materials, such as various types and sizes of plants, over a specified period of time for a predetermined price. With respect to this case, Lawndale Nursery had established contracts to provide materials to LAUSD running from March 1, 1985, through February 28, 1986, and from November 1, 1986, through *554 October 31, 1987. Lawndale Nursery would make delivery of materials specified in the contracts when they received an "M" purchase order from the Operations Branch. In addition to its established contracts, Lawndale Nursery also made delivery of materials to LAUSD pursuant to "X" and "OL" purchase orders. However, as noted above, Lawndale Nursery would not receive payment from LAUSD until the accounts payable section had received the required documentation and issued a check. Thus, Lawndale Nursery was paid in 1986 for some materials documented as delivered in 1985, and in 1987 for some materials documented as delivered in 1986. For 1985 and 1986, the purchase orders in evidence show that Lawndale Nursery and LAUSD did in excess of $ 359,000 worth of business. The majority of these purchase orders have petitioner's name, as signed by someone other than petitioner, on the receiving copy acknowledging delivery. However, most of the invoices from the vendor that accompanied these purchase orders were also executed or acknowledged by petitioner as correct. Ron Richardson
Ron Richardson (Richardson) had worked in the chemical distribution business for several years. In 1983, *555 he began a business which he sold to Orion Chemicals in April 1983. He worked with Orion Chemicals from 1983 through February or March 1984 as a regional sales manager, and thereafter set up a business called Rainbow Supply. Richardson regained control of Orion Chemical in 1985 following a discrimination suit, and, subsequent to that time, Rainbow Supply did business as Orion Chemical. Rainbow Supply also did business as Omni Enterprises, which was set up to obtain Government contracts. For several years LAUSD ordered products through various chemical companies, including Richardson's company. The purchase orders in evidence show that LAUSD did in excess of $ 104,000 worth of business with Orion Chemicals in 1985 and 1986, and in excess of $ 22,000 worth of business with Rainbow Supply in 1985. The majority of these purchase orders have a name other than petitioner's on the receiving copy signifying that the material was delivered to LAUSD. Investigation
In 1985, the Los Angeles County District Attorney's office began an investigation into allegations concerning the theft of property and funds from LAUSD. Most of the investigation itself occurred in 1986 and 1987. *556 Several vendors and LAUSD employees were the subject of the investigation. In April 1985, Richardson agreed with the District Attorney's office to work undercover in exchange for limited immunity from criminal prosecution. Pursuant to the agreement, Richardson met with petitioner several times while wearing a hidden microphone. Richardson also provided the District Attorney's office with a record of payments that he had allegedly made to petitioner with illegal funds over approximately a 3-year period. Richardson's record shows that he paid petitioner, or made payments on petitioner's behalf, in excess of $ 400,000 from 1984 through 1986. His record also states that 10 payments were made to petitioner, or to others for his benefit, in 1986 totaling $ 52,100. As part of the investigation, the District Attorney's office searched petitioner's house approximately four times, a business that petitioner owned at least one time, and a public storage facility that was in petitioner's name. During at least one of those searches LAUSD property was found and was seized. In the fall of 1986, a shipment of chemicals belonging to LAUSD was received by Richardson. The District Attorney's *557 office took those chemicals and supplied Richardson with $ 3,000. On December 5, 1986, Richardson gave petitioner the $ 3,000 and told him it was the proceeds from the sale of the LAUSD chemicals. This transaction was captured on video tape and soon thereafter petitioner was arrested. On December 8, 1988, petitioner pled nolo contendere to three felony counts (two counts grand theft, one count conspiracy). As part of the criminal investigation, but subsequent to petitioner's arrest, a search warrant was executed at Lawndale Nursery. Pursuant to that search warrant, business records, contractual agreements, and ledgers were seized. The records of Lawndale Nursery showed that the following payments were made to petitioner or on his behalf in 1986: Payee
Amount
Petitioner
$ 54,600.00
A-1 Florist
1,645.50
Omni Enterprises
5,920.00
Total
$ 62,165.50
In June 1986, respondent was notified that petitioner was being investigated, and was provided with the record of payments allegedly made by Richardson to petitioner. Respondent then began his own independent investigation regarding petitioner's financial situation. Immediately following petitioner's arrest, *558 respondent made a termination assessment against petitioner for 1986. Petitioner did not file a tax return for 1986, which was due April 15, 1987. On June 11, 1987, respondent issued a notice of deficiency determining that petitioner had unreported income for 1986 from three sources: (1) $ 42,624 in unreported wages from LAUSD; (2) $ 62,165 in unreported illegal income from Lawndale Nursery; and (3) $ 52,100 in unreported illegal income from Richardson. Respondent also determined that petitioner was liable for an addition to tax for civil tax fraud, or, alternatively, for additions to tax for negligence or intentional disregard of rules or regulations and for failing to file a 1986 tax return. Finally, respondent determined that petitioner was liable for an addition to tax for substantial understatement of income tax liability. OPINION 1. Unreported Income
The first issue for decision is whether respondent's determination that petitioner received unreported income was arbitrary and excessive. Ordinarily, respondent's determination in his notice of deficiency is presumed correct and petitioner bears the burden of overcoming this presumption. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). *559 However, courts have recognized a limited exception to the presumed correctness of a notice of deficiency where the issue involves unreported illegal income. See, e.g., Llorente v. Commissioner, 649 F.2d 152 (2d Cir. 1981), revg. in part and affg. in part 74 T.C. 260 (1980); Weimerskirch v. Commissioner, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Jackson v. Commissioner, 73 T.C. 394 (1979). The Ninth Circuit, to which appeal in this case would lie, has stated that: before the Commissioner can rely on this presumption of correctness, the Commissioner must offer some substantive evidence showing that the taxpayer received income from the charged activity * * *. [Wimerskirch v. Commissioner, supra at 360; citations omitted.]
Failure to make this showing may shift to respondent the burden of going forward with the evidence. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Jackson v. Commissioner, supra at 401. Petitioner concedes that he failed to report $ 42,624.20 [2] in wages that he received from LAUSD. He *560 argues, however, that respondent was arbitrary in determining that petitioner received $ 114,265 ($ 62,165 from Lawndale Nursery plus $ 52,100 from Richardson) in illegal income. At trial, petitioner called no witnesses and presented no evidence. Instead, he attacked the credibility of respondent's witnesses on cross-examination and claims on brief that there is no substantive evidence in the record to support respondent's determination. We disagree. We are satisfied that respondent presented the requisite amount of probative evidence linking petitioner to illegal income so that the presumption of correctness attached to the notice of deficiency. See Weimerskirch v. Commissioner, supra at 362. LAUSD ordered materials that it did not receive, and had property *561 stolen. Petitioner's status as Deputy Director of the Operations Branch of LAUSD enabled him to sign for, and to delegate the authority to receipt for materials allegedly received even if they were not. He was also in a position to steal property from LAUSD for his own benefit. We believe that the evidence presented by respondent, as shown below, not only links petitioner to this illegal income, but clearly and convincingly establishes that petitioner had illegal income. a. Lawndale Nursery
Respondent introduced into evidence the testimony of Henry Shimohara (Shimohara), the owner of Lawndale Nursery, and George Nakahara (Nakahara), an employee of Lawndale Nursery. They both testified that on or about July 1, 1985, petitioner met with them and stated that he had a plan to embezzle funds from LAUSD. Petitioner's plan involved having Lawndale Nursery deliver less materials than its contract with LAUSD called for, but then having petitioner ensure that the receiving copy of the purchase order signified that LAUSD had received all the materials. [3] The difference between the amount paid to Lawndale Nursery and the value of the amount delivered to the school district would *562 then be split approximately two-thirds for petitioner and one-third for Lawndale Nursery. Nakahara testified that Lawndale Nursery would retain one-third of the funds to pay its income and sales taxes since its records would reflect that it had earned the amounts paid to it. Both Nakahara and Shimohara testified that they participated in petitioner's plan from sometime in 1985 through December 1986. Nakahara testified that he kept a record of the dollar amount that Lawndale Nursery received for materials not delivered, which amounted to approximately $ 129,000. He then apprised Shimohara of the amount that Lawndale Nursery owed petitioner. Shimohara then testified that he paid petitioner *563 in cash, or paid others on petitioner's behalf, whenever petitioner asked him for money. Shimohara further testified that he kept a record of the payments that he made to petitioner or for petitioner's benefit. Respondent's determination of illegal income from Lawndale Nursery for 1986 is based on Shimohara's record seized in the investigation. As his primary argument, petitioner asserts that the testimony of Nakahara and Shimohara should not be given any probative value in view of their criminal prosecution, subsequent plea bargaining, and conviction in the related criminal proceedings brought by the Los Angeles County District Attorney's office. Respondent counters with the contention that while Nakahara testified that he and Shimohara were convicted in related criminal proceedings, Shimohara later corrected this statement by testifying that criminal charges against them were dropped when they agreed to pay restitution to LAUSD and to perform community service. Respondent further contends that Lawndale Nursery was merely a conduit in the embezzlement of funds from LAUSD. To a certain extent, we disagree with both parties. We are unable to accept respondent's contention that *564 Lawndale Nursery was merely a conduit. The record is clear that several persons, including Lawndale Nursery, were involved in and benefited from the theft of funds and property from LAUSD. On the other hand, we are also unable to accept petitioner's argument that their involvement in the theft necessarily leads to the conclusion that the testimony of Shimohara and Nakahara should be disregarded. Their testimony is consistent with Lawndale Nursery's records seized in the criminal investigation. Nakahara conceded that in excess of $ 100,000 worth of materials were not delivered by Lawndale Nursery to LAUSD. In most instances, it was petitioner who signified on Lawndale Nursery's invoice that the materials had been delivered. We also believe that petitioner caused the receiving copies of the purchase orders to be signed on his behalf acknowledging delivery. Petitioner also argues that Shimohara's record lists as "credits" the amounts that respondent determined were paid to petitioner, and that those amounts should therefore be interpreted as still owed to petitioner rather than as already paid. Petitioner also contends that the records of Nakahara and Shimohara should be disregarded *565 since the dollar amounts in Nakahara's records do not correspond with the dollar amounts in Shimohara's records. We disagree with petitioner's contentions. While Shimohara was somewhat confused by the meaning of the word "credit," he clearly testified, and his records clearly reflect, that the entries in his records represented amounts "paid out" to petitioner. Additionally, we do not interpret the records of Nakahara and Shimohara to be inconsistent since Nakahara recorded the amounts that were owed to petitioner, while Shimohara recorded the amounts that were actually paid to petitioner. We are convinced that Lawndale Nursery and petitioner together sought to and did embezzle funds from LAUSD, and that the records Shimohara maintained properly reflect the amounts that petitioner received as his "share." b. Ron Richardson
At trial, respondent also introduced into evidence the testimony of Richardson. Richardson testified that in October 1983 petitioner purchased approximately $ 17,000 in materials (lawn mowers, sprinkler parts, chain saws) from Orion Chemicals, and paid for those items with a purchase order from LAUSD for chemicals which were never delivered to LAUSD. *566 He further testified that petitioner stated to him that petitioner had a plan "to make money" and would ensure that Richardson benefited as well. Petitioner's plan involved having Richardson sell stolen LAUSD property and then splitting the proceeds between them. [4] Richardson stated that at various times from early 1984 to December 1986, petitioner, or other employees of LAUSD, would notify Richardson that materials had been delivered to LAUSD, including materials delivered by Richardson's company. According to Richardson, he would then send his truck to pick up the materials and would take them to Rainbow Supply to be resold. After they were resold, all the proceeds, he testified, were paid in cash to petitioner or were spent on petitioner's behalf. [5] Richardson's record shows that he paid petitioner, or others on petitioner's behalf, $ 52,100 in 1986. Not included in this amount is the $ 3,000 Richardson paid petitioner on December 5, 1986, which was captured on video tape. Respondent's determination of illegal income from Richardson is based on Richardson's record of what he paid petitioner in 1986. *567 We believe that Richardson's claim that he paid "all" the proceeds from the sale of the stolen LAUSD property to petitioner to be inherently incredible. However, based on the facts and circumstances, we are convinced that petitioner was involved in the theft of LAUSD property and received income from the sale of that property. In this regard, there is no doubt that petitioner believed he was receiving illegal income on December 5, 1986, at the time of the "sting" operation. There is also no doubt that petitioner had LAUSD property in his possession when the District Attorney's office searched his property. Thus, while we question Richardson's testimony that he did not personally benefit from the scheme, we believe his testimony is credible concerning petitioner's involvement. We find that respondent's determination based on Richardson's record was reasonable despite petitioner's claim that records had to be introduced showing exactly what was sold. Respondent presented substantive evidence showing that petitioner received income from the sale of stolen LAUSD property. It was petitioner's obligation to maintain records on the sales of this stolen property, and he cannot now *568 claim that respondent was arbitrary by failing to introduce those records. Cf. Adamson v. Commissioner, 745 F.2d 541, 548 (9th Cir. 1984). Thus, we find that the presumption of correctness attaches to the entire amount determined in respondent's notice of deficiency. Once the presumption of correctness attaches to a notice of deficiency, petitioner bears the burden of overcoming this presumption by a preponderance of the evidence. American Pipe & Steel Corp. v. Commissioner, 243 F.2d 125 (9th Cir. 1957), affg. 25 T.C. 351 (1955). In the instant case, petitioner has failed to satisfy his burden since at trial he failed to present any evidence on his behalf. Respondent's determination of unreported income is therefore sustained. 2. Civil Fraud Addition To Tax
The second issue that we must decide is whether petitioner's tax underpayment was due to civil tax fraud. Section 6653(b)(1)(A) provides that if any part of the underpayment of tax is due to fraud, there will be an addition to tax equal to 75 percent of the portion of the underpayment which is attributable to fraud. Section 6653(b)(1)(B) then adds to that *569 an addition to tax equal to 50 percent of the interest due with respect to such portion. If respondent "establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer established is not attributable to fraud." Sec. 6653(b)(2). Respondent bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b). To satisfy his burden, respondent must establish that petitioner intended to evade a tax known or believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. Commissioner, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). The existence of fraud is a question of fact that must be resolved upon consideration of the entire record. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). *570 Fraud may be established by circumstantial evidence and reasonable inferences derived therefrom, since direct proof of intent is rarely available. Rowlee v. Commissioner, supra.
In Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. a Memorandum Opinion of this Court, the Ninth Circuit set forth a nonexclusive list of circumstantial evidence, or "badges of fraud," that may give rise to a finding of fraudulent intent. Several of the factors present or discussed in Bradford are present in the instant matter: (1) Petitioner understated his income; (2) he engaged in an illegal activity; (3) he attempted to conceal such activity; and (4) he dealt in cash. See Bradford v. Commissioner, supra.Additionally, we believe that petitioner had unreported illegal income prior to 1986, and a pattern of underreporting income over an extended period of time is indicative of fraud. Brooks v. Commissioner, 82 T.C. 413, 431 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). Although respondent may not rely on petitioner's failure to prove error in respondent's *571 determination to satisfy his burden of proving fraud, Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982), the record in this case convinces us that at least a portion of petitioner's underpayment was due to fraud. At trial, petitioner failed to offer any evidence why this addition to tax should not apply to the entire underpayment. Consequently, petitioner has failed to establish that any part of the underpayment was not attributable to fraud. See sec. 6653(b)(2). We hold that respondent has satisfied his burden of proving an addition to tax for fraud as determined in the notice of deficiency. Rule 142(b). Based on this holding, we need not consider respondent's alternative arguments that petitioner is liable for additions to tax pursuant to section 6653(a)(1)(A) and (B) and section 6651(a)(1). 3. Substantial Understatement Addition To Tax
The final issue that we must decide is whether respondent erred in determining that petitioner is liable for an addition to tax pursuant to section 6661. Petitioner bears the burden of proof on this issue. Rule 142(a). Section 6661(a) imposes an addition to tax for a substantial understatement of income *572 tax. An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the understatement is reduced for any portion of the understatement due to the nontaxable treatment of an item by petitioner for which he had substantial authority or for which he provided adequate disclosure. See sec. 6661(b)(1)(B). Petitioner's failure to file his 1986 return constitutes a statement of zero tax liability for purposes of section 6661. Sec. 1.6661-2(d)(2), Income Tax Regs.; Hesselink v. Commissioner, 97 T.C. 94 (1991). Thus, petitioner had a substantial understatement of income tax unless he had substantial authority for not reporting his unreported income. See sec. 6661(b)(1)(B). Petitioner has failed to persuade us that he had such substantial authority. Rule 142(a). Therefore, we uphold respondent's determination on this issue. Based on the foregoing, Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code as in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. * 50 percent of the interest due on the portion of the underpayment attributable to fraud.↩
2. The $ .20 difference between the amount respondent determined were wages from LAUSD and the amount petitioner conceded were wages from LAUSD appears to be due to rounding. Consequently, we attach no significance to this difference.↩
3. An offshoot of petitioner's plan involved having Lawndale Nursery substitute different plants than were called for in the contract, but ensuring that the purchase order signified that LAUSD received the plants specified in the contract. The substituted plants were usually less expensive than those called for in the contract.↩
4. Similar to petitioner's transactions with Lawndale Nursery, Richardson also testified that petitioner had a plan to embezzle funds from LAUSD using Richardson's company. However, respondent determined that all illegal funds paid by Richardson to petitioner in 1986 were from the proceeds of stolen LAUSD property. ↩
5. Richardson testified that he and petitioner agreed that the first $ 100,000 would go to petitioner, and that they would split the proceeds after that. According to Richardson, he paid petitioner in excess of the first $ 100,000, but the two disagreed as to the amount. Richardson testified that he thereafter kept a record of the amount he paid petitioner, but that he was "always in the hole" and had to borrow funds to pay petitioner.↩