JOHNNY Y. FONG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fong v. Commissioner
Docket Nos. 26387-87, 36595-87
United States Tax Court
T.C. Memo 1991-180; 1991 Tax Ct. Memo LEXIS 200; 61 T.C.M. (CCH) 2450; T.C.M. (RIA) 91180; April 22, 1991, Filed *200 Decision will be entered under Rule 155. James I. Shepard (on brief only), for the petitioner. Steven A. Wilson, for the respondent. KORNER, Judge. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Docket
[1]Additions to Tax, Section   No.  Year
Deficiency
[2]6653(b)/(b)(1) 6661
26387-87
1981
$ 437,838
$ 218,919  $ 109,459.50
1982
497,976
* 248,988  124,494.00
36595-87
1983
653,502
* 326,751  163,376.00
*201 In his answers, respondent asserted additions to tax pursuant to section 6653(a)(1) and (2) for all three years at issue, and pursuant to section 6651(a)(1) for 1982, in the event that we do not sustain his determination of fraud. Petitioner filed a chapter 11 petition with the United States Bankruptcy Court for the Eastern District of California on January 13, 1989. An Order Modifying Automatic Stay to Allow United States Tax Court Proceedings to Continue was entered on March 10, 1989. At trial, we granted respondent's motion to conform the pleadings to the evidence pursuant to Rule 41. By Amendments to Answers, respondent revised his determination as follows: Docket
No.  Year
Deficiency
6653(b)/(b)(1)
26387-87
1981
$ 956,722
$ 478,361  1982
864,314
** 432,157  36595-87
[4] 1983
505,842
** 252,921  Docket
Additions to Tax, Section
No.  6661
6651(a)(1)*
6653(a)(1)*
26387-87
[3]      $ 47,836.10***
$ 216,078.50
$ 216,078.50
43,215.70***
36595-87
126,460.50
24,958.30***
*202 In his notice of deficiency for docket No. 26387-87, respondent determined that petitioner's filing status for 1982 was "head of household" rather than "married filing jointly." Petitioner did not raise this issue in his petition. *203 We therefore sustain respondent's determination on this issue. Rule 34(b)(4). The issues remaining for resolution are: 1. Whether respondent arbitrarily determined that petitioner received: a. unreported gross income during the years at issue; and b. unreported constructive dividends during the years at issue.
2. whether respondent met his burden of proving that petitioner received additional gross income, as alleged in respondent's Amendments to Answers, during the years at issue. 3. whether respondent erroneously determined that petitioner: a. received an unreported capital gains dividend of $ 88 during 1983; b. received unreported interest income of $ 253 during 1983; and c. is liable for self-employment tax of $ 3,338 for 1983.
4. whether respondent has met his burden of proving that petitioner committed civil tax fraud; or, alternatively, whether respondent has met his burden of proving that petitioner was negligent during the years at issue and failed to timely file a return for 1982. 5. whether respondent erroneously determined that petitioner is liable for additions to tax under section 6661 for 1982 and 1983. FINDINGS OF FACT Some of the *204 facts have been stipulated and are so found. The stipulation of facts, the first through ninth supplemental stipulations of facts, and attached exhibits are incorporated herein by this reference. Johnny Y. Fong (hereinafter petitioner) resided in Fresno, California, at the time of filing his petitions. He was married to Yueh Lung Fong from 1969 until they divorced in the latter part of 1982. Petitioner married Dr. Grace Lim (Dr. Lim) sometime after the years at issue. Petitioner is a medical doctor who obtained a doctor of medicine degree from the University of the Philippines and received post-graduate training in the United States. After completing his residency, he was in private practice in the Chicago, Illinois, area where he owned several medical clinics. Other doctors also worked at these clinics and either shared expenses with petitioner or worked for him. Petitioner managed these clinics and maintained their books and records. Petitioner moved from Illinois to Fresno, California, in 1977. During the years at issue, petitioner operated three medical clinics in California under the corporate name of Shaw Medical Group, Inc. (SMG). Petitioner was the sole shareholder *205 and president of SMG; the only other officer was Dr. Lim, who was the corporate secretary. SMG employed several doctors and other employees as well as petitioner and Dr. Lim. In the late 1970s and early 1980s petitioner formed several entities as he entered into various business [5] ventures. Some of these entities were incorporated and some were not; some of the entities which were initially incorporated had their corporate status revoked by early 1981. Although petitioner initially retained counsel to form some of his entities, by early 1981 he was forming corporations on his own via an incorporation form book. Petitioner reported zero taxable income on his individual income tax returns for all three years at issue. Petitioner timely filed his returns (with extensions) for 1981 and 1983. *206 Respondent granted petitioner an extension until August 15, 1983, to file his 1982 return. Petitioner filed his 1982 return on May 7, 1984. The examination of petitioner's returns commenced in 1985. As part of the examination, petitioner disclosed that he had seven bank accounts. Because of a lack of documentation concerning these accounts, respondent summonsed various banks for their records and discovered that petitioner had signatory authority on 16 accounts other than those provided. These accounts belonged to some [6] of petitioner's various entities. Respondent then expanded his examination to include these entities, and asked for the books and records of each. What books and records petitioner maintained for himself and for his related entities were inadequate and were produced in a piecemeal manner. Petitioner *207 represented himself during the examination and did not provide most of his records until 1989 after this Court had threatened him with sanctions. Respondent based his determination on the premise that all of petitioner's entities, other than SMG, were shams and that petitioner was utilizing their bank accounts for his personal benefit. Accordingly, he determined that petitioner had both unreported gross receipts and unreported constructive dividends for all three years at issue. Respondent reconstructed petitioner's unreported gross receipts for 1981 and 1982 using the bank deposits method. Generally, respondent determined that each deposit into each account on which petitioner had signatory authority, other than those accounts belonging to SMG, were income to petitioner. Respondent projected petitioner's unreported gross receipts for 1983 based in part on his 1982 determination because, when the notice of deficiency for 1983 was sent, respondent did not yet have any of petitioner's books and records and the statute of limitations was about to run. [7] Respondent completed his reconstruction of petitioner's income by determining that SMG had provided him with constructive dividends *208 during all three years at issue. Respondent determined that petitioner had unreported gross receipts of $ 632,072, $ 410,954, and $ 418,854 for 1981, 1982, and 1983, respectively. In support of his determination, respondent had a revenue agent prepare a total deposit analysis for the accounts determined to have taxable deposits. The agent determined that the following accounts were *209 attributable to petitioner, that the following deposits had been made into those accounts, and that the following adjustments should be made in determining unreported gross receipts: 1981
NAME ON ACCOUNT
BANK
ACCOUNT NUMBER
AMOUNT
California Asia
Import Export Co.
Bank of America
10145-04093
$120      American Doctor's Supply
Bank of America
1014-4-5473
76,177
American Doctor's
Office Supply
Bank of America
1014-3-01362
23,942
American Telephone
& Electronics
Bank of America
1014-7-01322
37,771
Hawaii Top Rice
Bank of America
1014-5-06991
67,620
Johnny Fong
Bank of America
10146-0-7171
323,931
Johnny Fong
Yueh L. Fong or
Frederick Fong
Bank of America
1014-1-00311
250,225
Johnny Y. or
Yueh Lung Fong
Bank of America
1014-6-05217
88,401
Johnny Y. or
Yueh Lung Fong
Bank of America
10140-04751
21
Johnny Y. Fong
Enterprises, Inc.
Bank of America
1014-5-07061
569,382
Total Deposits:
$ 1,437,590
Less: Nontaxable Deposits  576,618
Net Deposits
860,972
Less: Gross Receipts Shown  on Return        228,900
Unreported Gross Receipts
$ 632,072  1982
NAME ON ACCOUNT
BANK
ACCOUNT NUMBER
AMOUNT
Johnny Fong
Bank of America
10146-07171
$ 14,715 Johnny Y. Fong
Enterprises, Inc.
Bank of America
1014-5-07061
368,377
Johnny Fong,
Yueh Lung Fong or
Frederick Fong
Bank of America
1014-1-00311
149,547
American Doctor's
Office Supply
Bank of America
1014-3-1362
1,015
Total Deposits
$ 533,654
Less: Nontaxable Deposits  19,800
Net Deposits
513,854
Less: Gross Receipts  Shown on Return        102,900
Unreported Gross Receipts
$ 410,954
1983
Net Deposits (based
on 1982 determination)  $ 513,854
Less: Gross Receipts  Shown on Return        [8] 95,000
Unreported Gross Receipts
$ 418,854
*210 Respondent's agent also made an individual deposit analysis for each of the above-named accounts. Although each deposit analysis varies slightly in form and content, each shows the date and amount of each deposit into the account. Opposite each deposit is petitioner's explanation of the deposit, if any, and various symbols used by the agent to indicate that petitioner's explanation was investigated. Finally, a piece of adding machine tape is in the corner of each analysis, showing which deposits respondent determined were nontaxable. The funds in each of the above accounts, as well as the funds in SMG's bank accounts, were continuously moving from one account to another. Deposits into the above named accounts were treated in one of two ways. If the deposit was a check from SMG, it was treated as a nontaxable deposit (but that same amount was determined to be a constructive dividend to petitioner, see infra). If the deposit was not from SMG, it *211 was treated as a taxable deposit unless petitioner could prove otherwise. As proof of nontaxable deposits, respondent accepted canceled checks from one account payable to another. However, petitioner wrote certain checks payable to the same bank that the check was written on. A cashier's check would then be purchased that would be deposited into another account. Although respondent determined that some deposits made with cashier's checks were nontaxable, the majority were treated as taxable because they could not be traced. For this same reason respondent determined that all cash deposits were taxable. Respondent's agent also developed a check analysis for each of these accounts. These analyses show that substantial amounts were paid out of each account to petitioner or for his benefit. To complete his reconstruction of petitioner's income, respondent determined that SMG paid the following amounts to petitioner, or for his personal benefit (including payments to petitioner's related entities' accounts), as constructive dividends: Year
Amount
1981
$ 49,849 1982
640,338
1983
904,769
In support, respondent's agent prepared a check analysis for each of SMG's checking *212 accounts which show that the following total amounts were paid to petitioner, or on his behalf: Year
Amount
1981
$ 462,303.02
1982
1,074,245.90
1983
445,054.03
The check analyses show that the vast majority of these checks had someone other than petitioner as payee. Respondent prepared his check analyses subsequent to issuing the notices of deficiency. For 1981 and 1982 respondent concedes that he cannot meet his burden of proving an increased deficiency based on additional constructive dividends as shown in the check analyses. For 1983, respondent now concedes that petitioner received constructive dividends of only $ 445,054.03, as compared to his original determination of $ 904,769 (see supra). Additionally, a $ 270,745.93 payment made on June 1, 1982, considered to be a constructive dividend in one of the 1982 check analyses, is now conceded by respondent to not be a constructive dividend. However, based on the record before us, we are unable to conclude that this $ 270,745.93 was part of the $ 640,338 determined to be a constructive dividend in the notice of deficiency. SMG reported zero taxable income for all three years at issue. Respondent prepared *213 deposit analyses for SMG's accounts that show that SMG had substantial unreported gross receipts for 1982 and 1983. Respondent's Amendment to Answer now concedes that in 1983 petitioner had unreported gross receipts of only $ 123,533, compared to his original determintion of $ 418,854 (see supra). Respondent's agent prepared an individual deposit analysis for each account to justify the result. In 1989, respondent discovered several more bank accounts belonging to petitioner. Respondent contends in his Amendments to Answers that the following amounts from those accounts constitute additional unreported gross receipts: Year
Amount
1981
$ 776,060
1982
726,821
1983
59,677
Respondent's agent prepared an individual deposit analysis similar to those noted above for each of the new accounts. In the stipulation of facts for this case, petitioner conceded the existence of these accounts. However, he denied the truth and accuracy of each deposit analysis prepared by respondent. Respondent conceded, after the notices of deficiency were sent, that the following deposits which he had originally determined were taxable were in fact nontaxable: Year
Amount
1981
$ 18,349.25 1982
185,573.10
1983
4,000.00
*214 Most of these concessions were based on information petitioner provided to respondent after the notices were sent. We are unable to find that petitioner adequately substantiated any deposits as being nontaxable that respondent has not already conceded. The primary evidence supporting petitioner's contentions of nontaxable deposits is the testimony of petitioner and/or Dr. Lim. We find their testimony regarding these deposits, as well as their testimony concerning the amounts determined to be constructive dividends, to be improbable. The only other evidence of nontaxable deposits is deposit analyses prepared by petitioner on some of the accounts. The only documentation in these analyses relating to nontaxable deposits not already conceded by respondent consists of deposit slips. These deposit slips merely have an amount on them and at times a comment similar to "loan, not income." At least two of petitioner's corporate entities (other than SMG) maintained inventory, had employees, had their own phone number and address, and, to a limited extent, engaged in business. However, none of these entities earned the taxable amounts attributable to their accounts, and no tax returns *215 were filed for any of the entities determined to have taxable deposits. Additionally, petitioner owned less than 100 percent of the corporate stock of several of the corporate entities involved herein. However, petitioner maintained the books and records of all the entities and, despite his percentage of stock ownership, was in complete control of each entity and the funds maintained in the various accounts. Respondent also presented extensive evidence relating to the issue of fraud. Most of this evidence involved transactions and/or time frames not involved herein but which respondent claims shows modus operandi. We discuss some of this evidence below in our Opinion on the fraud issue. OPINION Issue 1. Whether respondent arbitrarily determined that petitioner received: (a) unreported gross receipts during the years at issue; and
(b) unreported constructive dividends during the years at issue.
Normally, respondent's determination in his notice of deficiency is presumed correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1930); United States v. Stonehill, 702 F.2d 1288, 1293 (9th Cir. 1983). Petitioner then *216 has the burden of overcoming this presumption by a preponderance of the evidence. American Pipe & Steel Corp. v. Commissioner, 243 F.2d 125 (9th Cir. 1957), affg. 25 T.C. 351 (1955), cert. denied 355 U.S. 906 (1957). An exception to the presumed correctness of a notice of deficiency exists where, in an unreported income case, respondent's case depends upon the presumption and the determination is shown to be arbitrary and excessive. Helvering v. Taylor,293 U.S. 507, 79 L. Ed. 623, 55 S. Ct. 287 (1935). To fall within this exception, the Ninth Circuit, to whom appeal in this case lies, has stated that: To rebut the presumption of correctness, the taxpayer has the burden of proving that the assessment is "arbitrary or erroneous." Where an assessment is based on more than one item, the presumption of correctness attaches to each item. Proof that an item is in error destroys the presumption for that single item; the remaining items retain their presumption of correctness. Even where the assessment has separable items, however, error which demonstrates a pattern of arbitrariness or carelessness will destroy the presumption for the entire *217 assessment. [United States v. Stonehill, supra at 1294; citations omitted.]
Ultimately, the standard to be applied is "whether respondent's actions [in issuing the notice of deficiency] were reasonable under all existing facts." Chaum v. Commissioner,69 T.C. 156, 162 (1977). Petitioner argues that respondent made several errors and failures which "demonstrate a pattern of arbitrariness or carelessness." Thus, argues petitioner, he has effectively rebutted respondent's presumption of correctness so that the burden of going forward with the evidence shifted to respondent. [9] Most of petitioner's allegations of error are discussed below. Other arguments were considered, but were dismissed as irrelevant. While we discuss each argument separately, we considered the arguments together in determining whether there was a "pattern of arbitrariness or carelessness." *218 a. Unreported gross receipts Persons subject to the Federal income tax are required to keep records. Sec. 6001; sec. 1.6001-1, Income Tax Regs. While no particular form is required for keeping records, the records must be sufficient for respondent to ascertain whether liability for tax is incurred and, if so, the amount thereof. Sec. 1.6001-1, Income Tax Regs. Where taxpayers keep inadequate records, we have approved of the bank deposits method to reconstruct their income. Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977); Tokarski v. Commissioner, 87 T.C. 74 (1986). Petitioner first argues that the determinations in the notices of deficiency were arbitrary because several deposits determined to be taxable were subsequently conceded to be nontaxable. Thus, argues petitioner, the determinations were conceded in error. Because petitioner's records were inadequate, respondent was justified in using the bank deposits method in reconstructing petitioner's income, Estate of Mason v. Commissioner, supra.At least some error is unavoidable when using an indirect *219 method to determine income. United States v. Stonehill, supra at 1296. Petitioner has not persuaded us that the determination contained any errors that have not already been conceded. Where respondent concedes errors in his original computations, and we sustain the corrected determination, those errors are not a basis for overcoming the presumption of correctness. Adamson v. Commissioner, 745 F.2d 541, 548 (9th Cir. 1984), affg. a Memorandum Opinion of this Court. Petitioner next argues that he provided explanations for various deposits which respondent failed to fully and adequately investigate. To ensure accuracy when using the bank deposits method of reconstructing income, respondent is required to investigate reasonable leads furnished by petitioner. Edelson v. Commissioner, 829 F.2d 828, 831 (9th Cir. 1987), affg. a Memorandum Opinion of this Court. However, petitioner has provided very little evidence other than his unsubstantiated testimony to support his position. Petitioner's primary complaint concerns a $ 437,286 deposit made into the Johnny Y. Fong Enterprises, Inc., account in 1981. Petitioner seems *220 to be arguing that if respondent had adequately investigated this deposit, he would have found the needed substantiation. While we recognize that petitioner represented himself during the examination of his returns and at trial, we are convinced that petitioner knew exactly what was required to substantiate a nontaxable deposit and that he was unable to provide this information. We are not required to accept petitioner's self-serving testimony, and are not persuaded that respondent failed to adequately investigate this or any other deposit. Petitioner next argues that some of the accounts belonged to viable corporate entities so that even if there were unreported gross receipts in their accounts, respondent erred in attributing the income to petitioner rather than to the corporations. Alternatively, petitioner argues that he owned less than 100 percent of the stock of several of these corporations so that he should only be taxed on the unreported gross receipts in accordance with his percentage of stock ownership. If the corporations were formed for substantial business purposes, or actually engaged in substantial business activities, their corporate forms must be recognized for *221 tax purposes. Moline Properties v. Commissioner, 319 U.S. 436, 87 L. Ed. 1499, 63 S. Ct. 1132 (1943). However, if the subject entities were unreal or shams, the corporate forms must be disregarded for tax purposes. Higgins v. Smith, 308 U.S. 473, 84 L. Ed. 406, 60 S. Ct. 355 (1940). Respondent determined that petitioner formed and utilized all the corporations as a way to conceal his true income for the years at issue. Petitioner has not persuaded us that respondent erred in this determination. On the contrary, the record is clear that petitioner used all of these accounts as parts of incorporated or unincorporated pocketbooks. The corporations whose names were on the various accounts did not necessarily earn the taxable amounts attributed to those accounts. Additionally, based on petitioner's degree of control of these corporations and their accounts, he has not persuaded us that he should not be taxed on all of their unexplained income, whether or not the corporations were shams or whether he owned less than 100 percent of the stock, under an assignment of income theory. See Lucas v. Earl, 281 U.S. 111, 74 L. Ed. 731, 50 S. Ct. 241 (1930). Petitioner also argues that, if he is going to be taxed on the *222 various entities' income, he should also be able to deduct their business expenses. While we agree with his proposition (for those entities which actually engaged in business), petitioner again failed to provide any substantiation to support his claim. Additionally, although we can approximate deductions under the theory of Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), we must have some basis for making a reasonable estimate. Masters v. Commissioner, 25 T.C. 1093 (1956), affd. 243 F.2d 335 (3d Cir. 1957). The record in this case provides no reasonable basis upon which to make such an approximation. b. Constructive dividends Respondent determined that SMG paid the following amounts for petitioner's personal benefit: Year
Amount
1981
$ 49,849 1982
640,338
1983
904,769
Respondent now concedes that the amount paid for petitioner's personal benefit in 1983 was $ 445,054.03. The Ninth Circuit has put forth a two-part test to determine whether a payment made by a corporation will be considered a constructive dividend to a shareholder: (1) The payment must be nondeductible to the corporation, and (2) the payment *223 must represent some economic gain or benefit to the shareholder. Palo Alto Town & Country Village, Inc. v. Commissioner, 565 F.2d 1388, 1391 (9th Cir. 1977). Such benefit constitutes a constructive dividend to the extent of the corporation's earnings and profits. Sec. 316(a). Petitioner contends that the amounts treated as constructive dividends are being taxed twice (or more) because respondent treated those amounts as unreported gross receipts, or they were reported by petitioner as salary. There is very little evidence that any of these amounts are being taxed twice. Respondent's check analyses show that the majority of the checks that support the determinations were not written to petitioner personally. Rather, most were written to other payees on petitioner's behalf and the checks from SMG deposited into the various entities' accounts were treated as nontaxable deposits. Also, the evidence does not support petitioner's contention that he treated these amounts as salary. Again, petitioner's only substantiation is his and/or Dr. Lim's testimony. Petitioner failed to persuade us that respondent erred in determining these amounts were an unreported benefit *224 to petitioner and were not deductible by SMG. Petitioner also argues that SMG lacked earnings and profits. Petitioner normally bears the burden of proving SMG did not have earnings and profits sufficient to support dividend treatment. Rule 142(a); Truesdell v. Commissioner, 89 T.C. 1280, 1295-1296 (1987); see also United States v. Leonard, 524 F.2d 1076, 1083 (2d Cir. 1975). Respondent made a deposit analysis for each of SMG's accounts showing that it had sufficient unreported gross receipts in 1982 and 1983 to support his determination for those years. Petitioner's only evidence that SMG did not have the requisite earnings and profits is his testimony and SMG's unsubstantiated tax returns. We are not persuaded that respondent erred in determining that SMG had earnings and profits sufficient to support dividend treatment for these amounts. Based on the foregoing, we hold that petitioner failed to prove that respondent's notices of deficiency were arbitrary. We hold that the deposits respondent determined to be taxable for tax years 1981 and 1982, other than the deposits conceded by respondent, are taxable. For 1983, respondent knew, *225 at the time the notices of deficiency were sent, of each account (except an account for the Toronto Corporation) alleged to contain taxable deposits in the Amendment to Answer. The unreported gross receipts for 1983 alleged in the Amendment to Answer (representing a concession by respondent from his original determination in the statutory notice), save for $ 59,677 attributable to the Toronto Corporation account and respondent's concessions, are therefore also taxable. The alleged unreported gross receipts from the Toronto Corporation account are addressed below under Issue 2 with the additional unreported gross receipts for 1981 and 1982. We also hold that the full amount originally determined to be taxable as constructive dividends for 1981 and 1982 are in fact taxable. Thus, while respondent conceded that $ 270,745.93 determined to be a constructive dividend in his 1982 check analyses for SMG was in fact not a constructive dividend, petitioner has failed to prove that this concession was part of the $ 640,338 determined to be taxable in the notice of deficiency. For 1983, we hold that $ 445,054.03 is taxable as constructive dividends as alleged in respondent's Amendments to *226 Answers, representing a concession to his original determination. Issue 2. Whether respondent met his burden of proving that petitioner received additional gross receipts, as alleged in respondent's Amendments to Answers, during the years at issue.
Respondent bears the burden of proving new matters and increases in deficiencies pleaded in his Amendments to Answers. Rule 142(a); Achiro v. Commissioner, 77 T.C. 881, 890 (1981). Respondent asserts for the first time in his Amendments to Answers that petitioner received unreported gross receipts from the following accounts: NAME OF ACCOUNT
BANK
ACCOUNT NUMBER
AMOUNT
California Asia
Import Export Co.
Bank of America 1014-0-00005
$ 65,834 California Asia
Import Export Co.
Bank of America 1014-2-09311
4,170
International
Trade Center
Bank of America 1014-2-00009
10,978
Fresno Video
Distributors
Bank of America 1014-0-00048
630,804
Fresno Video
Distributors
First Interstate Bank
675-7-03568 56,108
Calwest College
Bank of America 10145-85250 8,166
Total Deposits:     $ 776,060
1982
NAME OF ACCOUNT
BANK
ACCOUNT NUMBER
AMOUNT
California Asia
Import Export Co.
Bank of America
1014-2-09311
$ 8,377  California Asia
Import Export Co.
Bank of America
1014-0-00005
3,361
American Telephone
& Electronics
Bank of America
1014-7-01322
2,817
American Doctor's
Supply
Bank of America
1014-4-05473
224,293
Calwest College
Bank of America
10145-85250 67,148
Johnny Y. or
Yueh Lung Fong
Bank of America
10146-05217 3,889
International
Trade Center
Bank of America
1014-2-00009
122
Fresno Video
Distributors
Bank of America
1014-0-00048
64,184
Johnny Y.
Fong, M.D.
Central Bank   0609000090  352,630
Total deposits:     $ 726,821
*227 1983
NAME OF ACCOUNT
BANK
ACCOUNT NUMBER
AMOUNT
Toronto Corporation
Wells Fargo
0193-02663
$ 59,677
To sustain his burden of proof, respondent must first establish that there were unexplained deposits. Respondent argues that his agent's stipulated and jointly submitted deposit analyses for the various accounts prove that there were unexplained deposits into those bank accounts. We disagree. "Reports of revenue agents are not competent proof of the facts therein in the absence of an agreement to that effect." Blundon v. Commissioner,32 B.T.A. 285, 288 (1935). Petitioner stipulated to the existence of the above-named accounts. However, he specifically disputed the truth and accuracy of respondent's analyses. Thus, respondent has not shown that the above deposits were made in those accounts, let alone that those deposits were unexplained. The only other evidence that any deposits were made in any of these accounts consists of deposit analyses made by petitioner for one account in 1981 and three accounts in 1982. Respondent disputes the truth and accuracy of these documents. By failing to prove unexplained deposits, respondent has failed *228 to meet his burden of proving that petitioner received additional unreported gross receipts as alleged in the Amendments to Answers. We therefore hold for petitioner on this issue. Issue 3. Whether respondent erroneously determined that petitioner:
(a) received an unreported capital gain dividend of $ 88 during 1983;
(b) received unreported interest income of $ 253 during 1983; and
(c) is liable for self-employment tax of $ 3,338 for 1983.
Petitioner contested these determinations in his petition. However, he did not address these issues at trial or on brief. If any evidence concerning these issues exists in the voluminous amounts of stipulations and exhibits, we are unable to discern it. We therefore hold that petitioner has failed to meet his burden of proving respondent's determination as to the amounts in (a) and (b) was erroneous. Rule 142(a). For the $ 3,338 self-employment tax under (c), we are unable to determine what income respondent determined to be self-employment income. See sec. 1401(a). We are therefore requiring that the parties recompute the self-employment tax for 1983, based on the other holdings in this case, as part of *229 their Rule 155 computations. Issue 4. Whether respondent has met his burden of proving that petitioner committed civil tax fraud; or, alternatively, whether respondent has met his burden of proving that petitioner was negligent during the years at issue and failed to timely file a return for 1982.
Respondent bears the burden of proving by clear and convincing evidence that petitioner's underpayment of tax for the years at issue was due to fraud. Sec. 7454(a); Rule 142(a); Stratton v. Commissioner,54 T.C. 255, 284 (1970). To meet his burden, respondent must establish: (1) An underpayment of tax; and (2) that some part of the underpayment was due to "an intentional wrongdoing * * * motivated by a specific purpose to evade a tax known or believed to be owing." Hebrank v. Commissioner,81 T.C. 640, 642 (1983), quoting Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968). The existence of fraud is a question of fact that must be resolved upon consideration of the entire record. Rowlee v. Commissioner,80 T.C. 1111, 1123 (1983). Fraud is never presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). *230 It may, however, be established by circumstantial evidence since direct proof of intent is rarely available. See Stoltzfus v. United States,398 F.2d 1002, 1005 (3d Cir. 1968). We are not convinced that petitioner's underpayment of tax for the years at issue was due to fraud. Respondent elicited testimony from petitioner's former wife, past female companions, and investors who were disappointed because petitioner filed for bankruptcy. While these witnesses portrayed petitioner as a manipulative con man with scant regard for the truth, their testimony was obviously biased by their personal feelings toward petitioner. Respondent also advanced several theories of fraud including a fraudulent computer lease, a fraudulent property conveyance, and a money-laundering scheme. We are not convinced. Respondent's case consists largely of innuendo, petitioner's lack of records, and great confusion among and between the various entities. Respondent failed to prove any affirmative acts of fraud on the part of petitioner by either direct or compelling circumstantial evidence. We therefore hold petitioner not liable for the additions to tax for fraud. Alternatively, *231 respondent argues that petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations for all three years at issue. Respondent bears the burden of proof for this issue since it was raised for the first time in his answer. Rule 142(a). "Negligence is lack of due care or failure to do what a reasonable ordinarily prudent person would do under the circumstances." Neely v. Commissioner,85 T.C. 934, 947 (1985). Even in the absence of negligence, section 6653(a) is violated if petitioner intentionally disregards rules or regulations. Marcello v. Commissioner,380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part on other issues 43 T.C. 168 (1964). Respondent established that petitioner substantially understated his income for a three-year period and that petitioner failed to maintain adequate books and records. These factors, in combination with petitioner's level of education and business experience, are sufficient to sustain his burden of proof on this issue. Cf. Switzer v. Commissioner,20 T.C. 759, 766 (1953). We hold that the entire amount *232 of petitioner's underpayment of tax for all three years at issue was due to negligence. Also in the alternative to the addition to tax for fraud, respondent asserted for the first time in his answer that petitioner violated section 6651(a)(1) by failing to file a timely return for tax year 1982. Section 6651(a)(1) is not applicable if the untimely filing was due to reasonable cause and was not due to willful neglect. Respondent bears the burden of proving this issue. Rule 142(a). Petitioner obtained an extension of time to file his 1982 return until August 15, 1983. He filed that return on May 7, 1984. Petitioner's only explanation for the late filing of his return is that he believed that since there was no tax due on the return, it did not matter that it was late. As noted above, petitioner is a well-educated man experienced in business. He timely filed his 1981 and 1983 returns, even though those returns showed no tax due. We hold that respondent has met his burden of proof on this issue. Issue 5. Whether respondent erroneously determined that petitioner is liable for additions to tax under section 6661 for taxable years 1982 and 1983.
Petitioner has the burden *233 of proof on this issue. Rule 142(a). Section 6661(a) imposes an addition to tax for substantial understatement of income tax. An understatement is substantial if it exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1)(A). The amount of the understatement is reduced for any portion of the understatement due to the nontaxable treatment of an item by petitioner for which he had substantial authority or for which he provided adequate disclosure. See sec. 6661(b)(1)(B). Petitioner reported zero taxable income for tax years 1982 and 1983. Petitioner had no authority to support his failure to report receipts and constructive dividends. Cf. Crisp v. Commissioner,T.C. Memo 1989-668. Furthermore, petitioner did not disclose any facts pertaining to his receipt of unreported receipts and constructive dividends. We hold that petitioner is liable for additions to tax under section 6661, to be computed in accordance with our findings in this case. Decisions will be entered under Rule 155.
Footnotes
1. While the notices of deficiency and petitions refer to "penalties," we utilize the terminology set forth in the Internal Revenue Code, which is "additions to tax."↩
2. All statutory references are to the Internal Revenue Code, as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. Sec. 6653(b) was amended by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 325(a), 96 Stat. 324, 616. Sec. 6653(b)(1) and (2)↩ apply with respect to taxes the last day prescribed by law for payment of which is after September 3, 1982.
*. Plus 50 percent of the interest due on the entire deficiency pursuant to section 6653(b)(2)↩.
**. Plus 50 percent of the interest due on the entire deficiency pursuant to section 6653(b)(2)↩.
4. Respondent's Amendment to Answer for docket No. 36595-87 refers to a revised deficiency for "1982" rather than "1983." It is clear that this was a typographical error and petitioner has not claimed he was misled. We therefore ignore this error. Cf. Saint Paul Bottling Co. v. Commissioner, 34 T.C. 1137↩ (1960).
*. These additions to tax are in the alternative to the additions to tax pursuant to section 6653(b)↩.
3. Respondent conceded petitioner is not liable for an addition to tax pursuant to sec. 6661↩ for 1981 since that section is not applicable to that year.
***. Plus 50 percent of the interest due on the entire deficiency pursuant to section 6653(a)(2)↩.
5. Our use of the term "business" is for clarity while setting forth the facts of this case and does not imply that the corporate entities involved herein were separate viable entities for purposes of the Federal income tax.↩
6. Petitioner also owned an interest in several entities not discussed in this Opinion. Respondent did not determine and has not alleged that petitioner had income from these other entities.↩
7. Petitioner filed his returns for 1981 and 1982 on August 16, 1982, and May 7, 1984, respectively. The notice of deficiency for 1981 and 1982 was sent on May 7, 1987, so that the normal 3-year statute of limitations for tax year 1981 would have run. Although no agreement extending the statute of limitations for 1981 is in the record, both respondent and petitioner testified that an agreement was made, and neither party places the statute of limitations in issue. We therefore find that such an agreement exists. Petitioner filed his return for 1983 on August 17, 1984; the notice of deficiency for that year was dated August 17, 1987.↩
8. Respondent conceded that this amount should be $ 95,052.↩
9. Petitioner argues that in Conforte v. Commissioner, 74 T.C. 1160 (1980), affd. in part, revd. and remanded in part on other issues 692 F.2d 587↩ (9th Cir. 1982), we incorrectly interpreted the law of the Ninth Circuit by holding that while the "burden of going forward with the evidence" shifts to respondent when petitioner rebuts the presumption, the "ultimate burden of persuasion" always remains with petitioner. We need not address this argument since we hold that the presumption was not rebutted.